# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

NINA SHAHIN,                          )
                             )
        Plaintiff,            )
                             )
        v.                    )     C.A. No. 06-289 GMS
                             )
STATE OF DELAWARE                     )
DEPARTMENT OF FINANCE                 )
                             )
        Defendant,            )

## PLAINTIFF'S ANSWER TO THE DEFENDANT'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT. ANSWER WAS MANDATED BY THE COURT ORDER OF JUNE 7, 2007

**PLAINTIFF**

_____

**NINA SHAHIN**

**103 Shinnecock Rd.**
**Dover, DE 19904**
**(302)678-1805**

**DATED: June   18, 2007**



## TABLE OF CONTENTS

**Pages**

TABLE OF CITATIONS ………………………………………………………… iii

NATURE AND STAGE OF THE PROCEEDINGS ……………………………….. 1

STATEMENT OF FACTS ………………………………………………………… 2-3

ARGUMENT ……………………………………………………………………….. 4-8

STANDARD OF REVIEW :…………………………………………………

    I.     THE STATE OF DELAWARE RESCIENDED ITS SOVREIGN IMMUNITY BY DENYING THE PETITIONER HER CONSTI-TUTIONAL RIGHTS OF "DUE PROCESS" AND "EQUAL PROTECTION" GUARANTEED BY THE PARAGRAPH 1 OF THE 14TH AND THE 5TH AMENDMENTS OF THE CONSTITUTION OF THE USA IN ALL STATE COURTS FROM THE JUSTICE OF THE PEACE TO THE SUPERIOR WITH SUPREME COURT PROVIDING A COVER UP FOR ALL THE VIOLATIONS. 11TH AMENDMENT IN SUCH CASES DOES NOT SHIELD THE STATE AND SPECIFICALLY ALLOWS LAWSUITS AGAINST THE STATE BY CITIZENS OF THAT STATE, SO THE FEDERAL DISTRICT COURT HAS THE JURISDICTION OVER THE SUBJECT MATTER.

    II.    THE STATE OF DELAWARE WAIVED ITS SOVEREIGN IMMUNITY UNDER 11TH AMENDMENT IN DISCRIMINATION IN EMPLOYMENT CASES UNDER THE *DEL.C.ANN.* TITLE 19, § 714(c) IN WHICH THE STATE SPECIFICALLY GIVES THE CHARGING PARTY AN OPTION TO FILE A LAWSUIT EITHER IN STATE SUPERIOR  OR IN FEDERAL COURT BUT NOT BOTH AND THIS COURT THEREFORE HAS A JURISDICTION OVER THE SUBJECT MATTER IN THIS CASE.

    III.    THE STATE OF DELAWARE WAIVED ITS SOVEREIGN IMMUNITY UNDER 11TH AMENDMENT BY ACCEPTING FEDERAL FUNDS WHICH IS A PRECONDITION FOR ACCEPTANCE AS IT IS RULED BY THE U.S. COURT OF APPEAL FOR THE THIRD CIRCUIT IN *KOSLOW V. PENNSYLVANIA.*

CONCLUSION  …………………………………………………………………… 9-11

## **TABLE OF CITATIONS**

**Pages**

**Cases:**

*Kimel v. Florida Board of Regents,* 528 U.S. 62 (2000)  ........................     4, 9

*Elberta Bernice Lieberman v. State of Delaware, Family Court of Delaware.*     7, 10
(Attached in the **Exhibit U**)

*Koslow v. Pennsylvania,* 302 F. 3d 161 (3d Cir. 2002) ...........................     7, 9, 11

**Statutes, Rules & Other Authorities:**

5th Amendment of the US Constitution ...............................................     4, 9, 10

14th Amendment of the US Constitution ...............................................     4, 10

11th Amendment of the US Constitution ...............................................     9, 10

Title VII Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17 (1994 & Supp.
IV 1998)  .....................................................................................     1, 8

Age Discrimination in Employment Act, (ADEA), 29 U.S.C., §§ 621-639
(1994 & Supp. IV, 1998) .................................................................     1,4, 7, 8, 9

American with Disabilities Act, (ADA), 43 U.S.C., §§ 1201-12213
(1994 & Supp IV 1998)  .................................................................     7, 8, 9

19 *Del.C.Ann.* § 714(c) .......................................................................     6, 7, 9, 11

19 *Del.C.Ann.* § 710(1)  .......................................................................     6

Federal Rules of Civil Procedure 8(a) ...............................................     1

## NATURE AND STAGE OF THE PROCEEDINGS

1.    The Defendant correctly presented the nature of the proceedings as well as the Plaintiff's error in identifying the correct law under which the lawsuit was supposed to be brought against the State but the Plaintiff acted on instructions she had obtained on the phone from the Clerk of the Federal District Court and would question whether she should be held responsible for following the instructions of the Clerk.   The correct law is the Age Discrimination in Employment Act (ADEA) and by adding "Age Discrimination" to the list of choices, per Clerk's instructions, the Plaintiff meant just that.

2.    Defendant claims that the Plaintiff pleads no specific facts in her complaint failing to meet even a notice of pleading standards (F.R.C.P. 8(a)).  In the same line of logical reasoning the Defendant claims that the Plaintiff failed to state a claim over which the Court has jurisdiction or state a claim upon which relief can be granted.   Plaintiff disagrees. Although the Complaint was wrongly filed under Title VII because the Plaintiff was so instructed by the Clerk of the Federal District Court, the Defendant reproduced only a portion of the Complaint with the choices made by the Plaintiff on the third page of the Complaint failing to reproduce the second page of the complaint where the Plaintiff had indicated the specific fact as a "Failure to Employ" in the period "2004-2005" **(Exhibit A)**.    Indication of these facts along with the basis of "Age Discrimination" is sufficient for the Complaint and is the claim upon which the Plaintiff is seeking the relief and she disagrees with the Defendant's conclusion that this claim is not the one "over which this Court has jurisdiction or claim upon which relief can be granted".

1

## STATEMENT OF FACTS

In response to the Delaware Division of Revenue advertisement placed in the local newspaper "The State News" on 05/02/2004 **(Exhibit B)** the Plaintiff submitted her application for one of the two positions of Tax Examiner advertised (confirmation of the application is reproduced in **Exhibit C)**. On the basis of her qualifications and experience she was placed as # 2 on the register **(Exhibit D)**. The Plaintiff was called for two interviews but was offered neither of the two positions advertised although the letter had not been sent to her in proper time to inform her of this fact. To the contrary, on 10/15/2004 a lady by name Carroll, called the Plaintiff and asked whether she was still interested in the position and willing to come for an interview. The Plaintiff had never heard about the system of three interviews and she called Mr. James Platt at the Department of Human Relations who verbally informed her that another person had been offered a job and the second position was changed to the Abandoned Property Tax Auditor. The Plaintiff felt insulted and humiliated by lack of respect by ignoring the need of sending a proper notice to her and another call for interview without explanations that it was for another position. The Plaintiff expressed her feelings in the letter sent to Mr. Platt on 10/22/2004 by a certified mail with return receipt **(Exhibit E)**. The "thank you" letter was finally mailed from the Department of Revenue in November of 2004 and apparently in response to the Plaintiff's angry letter **(Exhibit F)**.

On December 13, 2004 the Plaintiff filed a discrimination complaint with the Delaware Department of Labor. The Division of Revenue response and the request for mediation was dated 01/14/2005 **(Exhibit G).**

On January 29, 2005 the Plaintiff applied for another position of Tax Auditor II advertised by the Delaware Department of Revenue (see confirmation of the application in **Exhibit H).** The mediation took place on March 2, 2005. During mediation process the representatives of the Delaware Department of Revenue falsely claimed that the Plaintiff did not have qualification for the Abandoned Property Tax Auditor and that they did not have any other positions open at that time. The Plaintiff produced her application for the Tax Auditor II position and the representatives of the DE Department of Revenue were embarrassed by being caught lying. The next day the Plaintiff received a letter from the Department dated with the date of mediation session **(Exhibit I)**. It is the Plaintiff's impression that this letter, interview in April and very quick "thank you letter" **(Exhibit J)** had been staged for pro forma reasons only because the position had been filled before March or the process had been in a later stage to include her or already complete.

After that the case was sent for investigation with what appears to be violations of the process and procedures **(Exhibit K)** that had never been corrected and was rushed to a negative conclusion in spite of the Plaintiff's objections **(Exhibit L)**.

3

## ARGUMENT

1.    Having agreed that the lawsuit should have been filed under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-639, the Plaintiff also admits that the United States Supreme Court in *Kimel v. Florida Board of Regents,* 528 U.S. 62 (2000) held that "the ADEA's purported abrogation of the State's sovereign immunity is invalid", *Ibid.,* 91.    Yet, the Plaintiff disagrees that this case has an overriding and decisive power over her case.    In 5-4 opinion delivered by the Justice, Sandra Day O'Connor, is written: "States may discriminate on the basis of race or gender, we require a tighter fit between the discriminatory means and the legitimate ends they serve... Our decision today does not signal the end of the line for employees who find themselves subject to age discrimination at the hand of their state employers.    We hold only, that in ADEA, Congress did not validly abrogate the State's sovereign immunity to suits by private individuals.    State employees are protected, in almost every State of the Union.    Those avenues of relief remain available today, just as they were before this decision" *Ibid.,* 93.    So, the majority of only one vote made a decision on the assumption that the system of justice within the States of the Union works.    This is not true in the specific case of the Plaintiff.

        The simple case of violation of the federal Regulation CC by the Delaware Federal Credit Union was turned into the Plaintiff's quest for American Justice because of gross violations of her and her husband's constitutional rights of "due process' and "equal protection" guaranteed by the    § 1 of the 14th and the 5th Amendments of the US Constitution.    The case went through all the courts of the State of Delaware from the Justice of the Peace Court to the Supreme Court of Delaware and the Petition for Writ of

4

Certiorari was filed at the Supreme Court of the United States **(Exhibit M).** The opposing attorney who had no legal arguments left filed a waiver **(Exhibit N)**. The Supreme Court of the US in its closed session on May 17, 2007 Writ of Certiorari to the Plaintiff denied **(Exhibit O)**. The Plaintiff is filing a lawsuit in this Federal Court of the District of Delaware against the State since the judges has absolute immunity from prosecution seeking damages for her constitutional rights violations.

The Plaintiff and her husband filed another lawsuit at the Delaware Superior Court seeking civil damages for aggravated harassment by the CEO of the Delaware Federal Credit Union as a result of which the Plaintiff's husband ended up at the emergency room of the Kent General Hospital with high blood pressure and the perjury committed by the Delaware Federal Credit Union employee. The same Superior Court judge that falsified facts and the decision of the JP Court and denied the Plaintiff and her husband statutory damages under the Regulation CC in the case that reached the US Supreme Court dismissed the case with prejudice and awarded attorney's fees in violation of specific prohibition of such an award by the Rules of Civil Procedure of the Superior Court (copy of the Plaintiff's Opening Brief is in **Exhibit P** and the Motion filed under the Rule 30(b) in **Exhibit Q)**. On 06/11/2007, the day the Plaintiff mailed her lawsuit to this court, the DE Supreme Court finally vacated the decision of the Superior Court awarding attorney's fees that the Plaintiff considered as judicial harassment but ignored all the issues raised by the Plaintiff-Appellant in her Motion **(Exhibit R)**.

The second lawsuit of NSF (non sufficient funds) fees that stemmed from the same misclassified local check that triggered the fees and the lawsuits was finally heard on appeal at the Court of Common Pleas of Kent County on 01/17/2007. At last, in the

5

courtroom the Plaintiff had the opportunity to call every witness she wanted and question that witness, the basic right of any party in adversarial proceedings that had been denied to her and her husband in all previous courts proceedings. But it was also this particular hearing that had been rigged with so gross procedural violations that in aggregate they amount to violations of the Plaintiff's constitutional rights of "due process" and "equal protection" as well gross violations of professional standards of the judge and the attorney that the Plaintiff filed her Motion protesting all those violations **(Exhibit S).** The opposing attorney either did not file objections to this Motion or did not serve the copy to the Plaintiff.

At this Point the Plaintiff does not trust the Delaware judges and the Delaware Courts. She wrote a Redress of Grievance to both Houses of the Congress, other organizations and the press **(Exhibit T)**.

**2.** In Title 19 "Labor", Chapter 7 "Employment Practices", Subchapter II "Discrimination in Employment", § 714 (c) of the Delaware Code Annotated it is written: "The charging party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A charging party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the charging party files in Superior Court and in a federal forum, the respondent may file an application to dismiss the Superior Court action under this election of remedies provision. (74 Del. Laws, c. 356.)" In § 710 entitled "Definitions", under (1) the "age" is defined: ""Age" used in this subchapter means the age of 40 or more years of age" which indicates that the Title 19 in its Subchapter II of "Discrimination in Employment" includes the "age" as a factor covered

6

by all sections including cited above § 714(c). With this provision in the Delaware Constitution it is clear that the State of Delaware rescinded its sovereign immunity over the age discrimination lawsuits to federal courts as an option to be made by a charging party. Therefore, since the Plaintiff has decided to pursue the federal venue in her case, this court has a jurisdiction over her claim because it is authorized by the Delaware Constitution.

**3.**     In unpublished and not precendential case of *Elberta Bernice Lieberman v. State of Delaware, Family Court of Delaware,* the Federal Court of Appeal for the third circuit on appeal from this District Court of Delaware under the same presiding judge, Honorable Gregory M. Sleet, made the following conclusion: "Turning to the Eleventh Amendment issue, we note that, while this case was pending with us, but before briefing, we decided *Koslow v. Pennsylvania,* 302 F. 3d 161 (3d Cir. 2002). In Koslow, a disability discrimination case under § 504 of the Rehabilitation Act, we had to determine whether the Commonwealth of Pennsylvania had waived its sovereign immunity by accepting certain federal funds for the Department of Corrections. *Koslow,* 302 F. 3d at 165. We determined that Congress could require a state to waive its immunity to suit under the Rehabilitation Act as a condition for receiving federal funds and had do so. *Id.* At 172. Since the Commonwealth of Pennsylvania had accepted federal financial assistance under the State Criminal Alien Assistance Program, and provided these federal funds to the Department of Corrections, we conclude that the Commonwealth had waived immunity for § 504 claims against the Department of Corrections under the Rehabilitation Act. *Id.* At 172. Our decision in *Koslow* is on all four with this case. " (a copy of the case is presented in **Exhibit U)** Since ADA has the same status of a federal civil right law which

7

is not part of Title VII as ADEA it should be accorded the same treatment as ADA. The State of Delaware does receive federal funds for different purposes and the Plaintiff presented in **Exhibit V** a list and amounts of those funds for the 3rd quarter of 2006, as an example.

## CONCLUSION

In its 5 - 4 decision in *Kimmel v. Florida Boards of Regents*, the Supreme Court
of the United States gave new life to the eighteenth-century notion that public servants
serve at the whim of the a benevolent king (sovereign) who can do no wrong.    This
revival of sovereign immunity doctrine under the Eleventh Amendment of the U.S.
Constitution threatens the civil rights of the US citizens including those under the Age
Discrimination in Employment Act (ADEA), American with Disabilities Act (ADA) and
some others.    If the State discriminates the citizens and then denies them their
constitutional rights of "due process" and "equal protection" in courts, the citizens have
no legal recourse then the society with such situation cannot call itself a democracy but
becomes a totalitarian regime.  The Petitioner who was born, raised, and worked in law
enforcing agency in the former Soviet Union had never experienced anything even close
to this sort of treatment and complete denial of rules of law, regulations, process,
standard of professional ethics as in the state of Delaware.

The Plaintiff's case is an outrageous one when the Plaintiff in *pro se*
representation was denied every constitutional right of "due process" and "equal
protection" from proper notice, the right of cross-examination, proper application of law
and legal procedures to confronting perjury, falsification of facts and the decision of the
lower court by a judge of a higher court to  breaches of professional standards by judges
and the attorneys and a complete cover up of all these violations by the Delaware
Supreme Court directly by approving Motions filed in violation of its own civil rules of

9

procedure or indirectly through its auxiliary organizations of Court on the Judiciary and the Disciplinary Board.

If the State denies its citizens in its courts the civil rights guaranteed by the U.S. Constitution it strips itself of the sovereign immunity and this is the implication of the 11th Amendment that specifically allows the lawsuits against the State by its own citizens, the fact Supreme Court of the United States trips over. The § 1 of the 14th Amendment specifically guarantees the "due process" and "equal protection" to the US citizens and the 5th Amendment goes beyond just a simple guarantee of a "fair process". The Plaintiff faced in the Delaware Courts not only violations of her constitutional rights, insults and humiliation but a clear evidence of collusion between judges of different courts as well as judges and attorneys against the Plaintiff to deny her and her husband rights and benefits of the federal law, legal rules and procedures, and the professional standards required from the judges and attorneys. Because of all these violations and permeating corruption the Plaintiff will not hesitate to take each and every of her cases to the US Supreme Court to demonstrate that the laws, regulations, rules of civil procedures and professional standards have no real meaning and application in real life in the state of Delaware.

There is ample and overwhelming evidence that the Plaintiff could not get a fair trial in any of the Delaware State courts and specifically in Delaware Superior Court in which she mandated by the Delaware Constitution to initiate her age discrimination lawsuit and the only way for her to get an impartial judge and possibly a fair trial is to change a venue from the State courts to a Federal one, option given to her by the Delaware Constitution.

10

Since the 19 *Del.C.Ann.* § 714(c) specifically allows for the charging party the choice of venue in either a State or federal court it unequivocally indicated its waiver of the state immunity under 11th Amendment. The decision of the Federal Court of Appeal of the third circuit in *Koslow v. Pennsylvania,* 302 F.3d 161 is a mandatory for this court in the part in which it established that the states that accept federal money for their programs are required to waive their state sovereign immunity under 11th Amendment to allow suits on discrimination grounds that are not part of the Title VII civil rights but other federal non discrimination laws.

There is also evidence that the age discrimination the Plaintiff filed the lawsuit about continues to this date. By now there are 19 cases of discrimination filed with the Delaware Department of Labor which is a testament of the continuous discrimination the Plaintiff is facing from the State of Delaware **(Exhibit W).**

The Plaintiff, therefore, respectfully asks this Honorable Court to deny the Motion to Dismiss filed by the Defendant.

**For the Plaintiff**

**Nina Shahin, CPA**
103 Shinnecock Rd.
Dover, DE 19904

(302)678-1805

Dated: June 18, 2007

11

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on June 18, 2007, she caused the attached Plaintiff's *Answer to the Defendant's Opening Brief In Support Of Motion to Dismiss the Plaintiff's Complaint* to be delivered to the following persons in the form and manner indicated:

### NAME AND ADDRESS OF RECIPIENTS:

1.   **U.S. District Court**
     844 King Street
     U.S. Courthouse
     Wilmington, DE 19801

MANNER OF DELIVERY:

Original and a copy by certified mail with return receipt

2.   **Stephani J. Ballard, # 3481**
     Deputy Attorney General
     Department of Justice
     State of Delaware
     Carvel State Office Building
     820 North French Street, 6th fl.
     Wilmington, DE 19801
     Attorney for Defendant

MANNER OF DELIVERY:

Two true copies by first class mail with confirmation of receipt

**Nina Shahin**

**June 18, 2007**

12



(Del. Rev. 12/90)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

NINA SHAHIN, CPA
_____

_____

(Name of Plaintiff or Plaintiffs)

v.

STATE OF DELAWARE
_____

DEPARTMENT OF FINANCE
_____

(Name of Defendant or Defendants)

CIVIL ACTION No. _____

FILED

MAY - 3 2006

U.S. DISTRICT COURT
DISTRIC    DELAWARE

## *COMPLAINT UNDER TITLE VII*

## *OF THE CIVIL RIGHTS ACT OF 1964*

1.    This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for **employment discrimination**. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2.    Plaintiff resides at 103 SHINNECOCK ROAD
_____
                                    (Street Address)
DOVER          KENT        DELAWARE          19904
_____
(City)        (County)      (State)         (Zip Code)
(302)678-1805
_____
(Area Code) (Phone Number)

3.    Defendant resides at, or its business is located at    820 N. FRENCH STREET
_____
                                                              (Street Address)
WILMINGTON        NEW CASTLE DE        19899
_____
(City)        (County)      (State)         (Zip Code)

4.    The discriminatory conduct occurred in connection with plaintiff's employment or application to be employed at, defendant's    department of revenue    place of business located at    820 N. French Street, Wilmington, DE 19899
                      (Defendant's Name)
_____
(Street Address)
        Wilmington        New Castle DE        19899
_____
            (City)        (County)      (State)         (Zip Code)

5.     The alleged discriminatory acts occurred on  2004-2005
                                                    (Day)        (Month)        (Year)

6.     The alleged discriminatory practice  is  XXXXX continuing.

7.     Plaintiff filed charges with the Department of Labor of the State of Delaware,

Labor Law Enforcement     24 N.W. Front Street, Milford
   (Agency)          (Street Address)          (City)
Sussex          DE          19963                                              , regarding
   (County)          (State)          (Zip Code)
defendant's alleged discriminatory conduct on _____, De      in 2004-2005
                                               (Day)      (M.        (Year)

8.     Plaintiff filed charges with the Equal Employment opportunity  Commission of the United States
regarding defendant's alleged discriminatory conduct on:  13      ,  12      ,  2004
                                                         (Day)       (Month)      (Year)

9.     The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter
which was received by plaintiff on:  20        02        2006
                                    (Day)       (Month)      (Year)

## (NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)

10.     The alleged discriminatory acts, in this suit, concern:

        A.     Failure to employ plaintiff.

        B.     Termination of plaintiff's employment.

        C.     Failure to promote plaintiff.

        D.     Other acts (please specify below)

11.    Defendant's conduct is discriminatory with respect to the following:

    A.    ⚪    Plaintiff's race

    B.    ⚪    Plaintiff's color

    C.    ⚪    Plaintiff's sex

    D.    ⚪    Plaintiff's religion

    E.    ⚪    Plaintiff's national origin

    D.    ⚫    Age Discrimination

12.    A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.    If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14.    Plaintiff's has no adequate remedy at law to redress the wrongs described above.

**THEREFORE, Plaintiff prays as follows: (Check appropriate letter(s))**

    A.    ☒    That all fees, cost or security attendant to this litigation be hereby waived.

    B.    ☒    That the Court appoint legal counsel.

    C.    ☒    That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated:    05 / 01 / 200 6

_____
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)



5/2/2004

**The DownstateDaily**

| Employment Full Time 205 | Employment Full Time 205 | Employment Full Time 205 |

Accounting · 5/19

04-08

## State of Delaware

### Division of Revenue
Career Opportunities as a **TAX EXAMINER** (2 positions)

The Department of Finance is currently recruiting for a TAX EXAMIN-ER (Ann. # 04-08) for the Division of Revenue-the state's principal agency for tax administration, collection and enforcement. As a Tax Examiner, located in Wilmington, DE, you will be responsible for full performance level inspection and examination of tax returns, and financial records, and determine whether taxes are due the State and secure collection of unpaid taxes.

The successful candidate will possess an Associates Degree major-ing in Accounting or a Bachelors degree in a Business discipline which includes Accounting, Business Administration, Economics, Finance, Business Management and Computer Information Systems or experience in all of the following areas: accounting; financial analysis; interpreting laws, rules, regulations, policies, and procedures; inter-viewing and in narrative report writing. A valid driver's license is re-quired.

We offer a competitive salary range of $29,873 - $37,341 (Min to Midpoint) · 37.5 hours work week ·medical, dental and life insurance ·12 paid holidays ·15 vacation and sick leave days · flexible spending plan · employee & employer participating Deferred Compensation Program · education reimbursement program · pension, etc.

The State of Delaware is an AA/EEO Employer

**APPLICATION PROCEDURES:** You may apply on line by accessing *www.delawarestatejobs.com/postings.*

You must submit a completed/signed State of Delaware employment application on or before May 19, 2004. You may submit your applica-tion to: DE Department Of Finance, Human Resources, Attn: James A. Platt, Carvel State Office Building, 820 N. French Street, Wilmington, DE 19802. Email: james.platt@state.de.us Fax: (302) 577-8982
Direct deposit of paychecks will be required as a condition of employment for all new employees

## Confirmation

Your confirmation number is: **125461740**

You have successfully submitted an application to the State of Delaware Personnel Office for posting **Tax Examiner**. Your application will be forwarded to the appropriate agency.

If you have applied for a position that requires a written test, you will receive a letter scheduling you to take the test. If you have applied for a position that requires a written test that you have previously taken, and you did not indicate "Re-Test" on your application, you will receive a letter notifying you of your tested score. If you wish to re-test, you will receive a letter scheduling you to take the test. After you have tested, you will receive a letter notifying you of your score.

If you have applied for a position that is assessed based on a rating of your "Training and Experience", you will receive a letter notifying you when a score has been assigned to your application.

All notifications will be sent by the recruiting agency. If you have not received notification within 30 days, please contact the recruiting agency.

**Thank You for using our Online Employment Application!**

Close Window



STATE OF DELAWARE
DEPARTMENT OF FINANCE
OFFICE OF THE SECRETARY
HUMAN RESOURCES
CARVEL STATE OFFICE BUILDING
WILMINGTON, DELAWARE 19801
FAX: (302) 577-8982

July 20, 2004

Ms. Nina Shahin
103 Shinneock Road
Dover DE 19904

Dear Ms. Shahin:

Congratulations! We have recently reviewed your application for the *TAX EXAMINER* position within the Department of Finance, Division of Revenue, Wilmington office. You have been awarded a Training & Experience (T & E) rating of **100.00**, which places you at **#02** on the register. Your name will remain active on this register until July 21, 2005.

A hiring manager will be contacting you if a personal interview is to be scheduled.

Sincerely,

James A. Platt
Human Resources
(302) 577-8683

JP/jg

103 Shinnecock Rd.
Dover, DE 19904

**October 22, 2004**

**State of Delaware**
Department of Finance
Office of the Secretary of
Carvel State Office Buildi
Wilmington, DE 19801

**Mr. James A. Platt**

Dear Mr. Platt:

On July 20, 2004 you sent me a letter copy of which is enclosed. Per that letter I was selected as # 2 on the list of prospective candidates for the position of Tax Examiner. On August 12, 2004 I was called for the first interview for that position and on September 24 I was called for the second one. After the second interview I was told that I would receive a response either negative or positive within two weeks. Today it is almost a month but I have not received anything. On October 15, a lady by name Carroll, called and left a message on my phone asking me whether I was still interested in a position of a Tax Examiner because the department would like to call me for an interview. I was absolutely puzzled because I could not understand a system of calling for a third interview. When I talked to you on Monday October 18, it turned out that the position of a tax examiner in the Individual Tax Department was filled and I was contacted regarding the second position in the Abandoned Property Department. I asked you to send me a written notification. I have not heard from you. It is denigrating, insulting and unprofessional to handle applicants for the State of Delaware vacancies in this way.

I would like to get a written explanation of why I was not hired for the position in the Individual Tax Department, especially since I am a State of Delaware employee. Secondly, I would like to know why I was not notified of the result. And, thirdly, I would like to know where I stand in the selection process for the second vacancy.

Sincerely,

**Nina Shahin, CPA, MAS, MST**

**Attachment:** Copy of your letter dated July 20, 2004

---

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

State of Delaware
Dept of Finance
Secretary of HR
Carvel State Office Bldg
Wilmington DE 19801
Attn: James A. Platt

2. Article Number (Copy from service label)

7004 1160 0004 3854 5848

PS Form 3811, July 1999          Domestic Return Receipt          102595-99-M-

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)   B. Date of De
B. JOHNSON

C. Signature
X _____   ☐ Agen
                    ☐ Addr

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Mercha
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes



STATE OF DELAWARE
DEPARTMENT OF FINANCE
DIVISION OF REVENUE
CARVEL STATE BUILDING
820 N. FRENCH STREET
P.O. Box 8763
WILMINGTON, DELAWARE 19899-8763

November 3, 2004

Nina Shahin
130 Shinnecock Road
Dover, DE 19904

Dear Nina,

Thank you for coming to speak with us regarding the Tax Examiner position. We enjoyed having the opportunity to meet you and discuss your qualifications.

While we were most impressed with your credentials, we have selected another candidate whose skills are better suited for our needs at this time.

Thank you again for your interest in employment opportunities with the State of Delaware Department of Finance. We wish you success in your job search.

Sincerely,

Colleen Yegla

Colleen R. Yegla
Assistant Director
Office of Personal Taxes



STATE OF DELAWARE
DEPARTMENT OF FINANCE
DIVISION OF REVENUE
CARVEL STATE BUILDING
820 N. FRENCH STREET
P.O. Box 8763
WILMINGTON, DELAWARE 19899-8763

January 14, 2005

Julie Cutler
Supervisor
Office of Labor Law Enforcement
Division of Industrial Affairs
24 N.W. Front Street, Suite 100
Milford, DE 19963

Re: Shahin v. Delaware Department of Finance, Division of Revenue
Case No. 04120884 / 17CA500137

Dear Ms. Cutler:

This is the Division of Revenue's ***ANSWER*** to the charge of age discrimination lodged by Nina Shahin. According to the materials provided to the Division with the complaint, the Division is directed to serve a copy of the answer on the charging party but not any accompanying documents produced in support of the answer and excepted by 19 Del. C. § 710, et seq. In response to the particulars alleged in the charge of discrimination, the Division makes the following reply.

No. 1   Admitted that the charging party applied for various positions with the Delaware Department of Finance.
According to the Department's records the charging party applied for the position of financial management systems supervisor on or about May14, 2004. A copy of the application is attached hereto and marked as Exhibit 1. The charging party also applied for the position of tax examiner on or about May18, 2004. A copy of the application is attached hereto as Exhibit 2.

No. 2   The respondent is without sufficient information to admit or deny the information about the charging party's age, but does not contest the fact that she is a member of the protected class which consists of persons 40 years of age or older.

No. 3   Admitted that the charging party has not been hired by the Department of Finance. Denied that age or any other kind of discrimination played a part in the hiring decisions.

Concerning the financial management systems supervisor vacancy, charging party received a "not qualified" rating. See the July 2, 2004 letter from James Platt, Department Human Resource Specialist to Nina Shahin contained in the material provided by the charging party and sent to the Division with the charge of discrimination. A copy is attached to Exhibit 1 for convenience. The successful candidate for the financial management system supervisor position upon information and belief was a member of the protected class. A copy of the successful candidate's application and the certification list is enclosed as Exhibit 3.

Concerning the tax examiner position, when the position was advertised two vacancies existed, one in the Division's escheat department and one in the Division's personal income tax department. Charging party received a qualified rating at 100% and ranked second on the initial certification list. See the July 2, 2004 letter from James Platt, to Nina Shahin contained in the material provided by the charging party and sent to the Division with the charge of discrimination. A copy is attached to Exhibit 2 for convenience. The global ranking for the initial certification list was based solely upon the applications. It is attached hereto as Exhibit 4. Charging party interviewed along with 12 other candidates in the initial round of interviews. The initial certification list is attached hereto as Exhibit 5. Three Division employees, the manager of personal income tax processing, a senior tax examiner, and the supervisor of the revenue accounting system conducted the interviews. Two of those individuals are members of the protected class. At the conclusion of the first round of interviews, charging party ranked fourth. The ratings of each interviewer and their combined group rating including the areas scored are attached hereto along with the written notes of the interviewers as Exhibit 6.

A second round of interviews was conducted and five candidates were interviewed. The assistant director personal income tax, the manager of personal income tax audit, and the manager of personal income tax data review conducted the second round interviews. All of these individuals are members of the protected class. The second certification list is attached hereto as Exhibit 7. The successful candidate, who possesses both a law degree, a college degree in accounting and work experience in accounting, was the top rated candidate at the end of both the first and second round of interviews. The charging party ranked third at the end of the second round of interviews. The rating of each interviewer and their combined group rating including areas scored in the second round of interviews are attached hereto as Exhibit 8. A copy of the successful candidate's application is attached hereto as Exhibit 9. Upon information and belief, the successful candidate is not a member of the protected class.

No. 4  Admitted that the Division informed the charging party by letter dated November 3, 2004. See the letter from Colleen R. Yegla to Nina Shahin contained in the material provided by the charging party and sent to the Division with the Charge of Discrimination. A copy is attached as Exhibit 10.

In further response to assertions not contained directly in the charge but made in some of the written materials supplied to the Division with the complaint, the Division would offer the following.

No. 5    Charging party asserts that she is a State employee and submits a pay stub in support of the claim. Upon information and belief, the charging party is not a State employee but rather is employed as a teacher at a State university, which is supported by State funds. A teacher at a State University is a school employee not a State employee.

No. 6    The phone call of October 15, 2004, referred to by charging party in her letter dated October 22, 2004, to James Platt was an attempt to determine whether the charging party was interested in the remaining tax examiner position that was dedicated to the escheat department at that time. The first position filled was the one in the personal income tax department.

Concerning this second position in the escheat department, a certification list was issued to the manager of the escheat department on September 3, 2004, the same date that the certification list for the second round of interviews was issued for the other tax examiner position. This certification list is attached hereto as Exhibit 11. Charging party is on the list. The escheat manager because of other pressing business was unable get to the list or to begin to schedule interviews until mid-October. At or about that time, it was determined by the director of revenue and the deputy director in a meeting with the escheat manager that the minimum knowledge, skills and abilities required for the tax examiner position were inadequate to satisfy the full performance level needs of the escheat department.

At this same time, the State Personnel Office was in the process of updating the tax auditor class series description and retitling jobs from tax examiner, tax auditor and senior tax auditor into tax auditor I thru III. This review included a review of the minimum qualification requirements for the various levels.

Given the complexity of the abandoned property audit bureau, the revised minimum qualification requirements for the auditor I thru III series and State Personnel's approval of the special requirement of Fortune 500 company escheat auditing experience, it was decided to repost the vacancy a the tax auditor II. The pay grade increased from a pay grade 11 for the tax examiner position to a pay grade 15 for the tax auditor II position, reflecting the increased responsibilities and experience desired for the position. See the escheat auditor II advertisement included in the materials supplied by the charging party. The second tax examiner position advertised in May and to which the charging party aspired, was not filled at that time. It has not been filled yet. The tax auditor II position has been advertised and the Division is beginning to conduct the first round interviews at this time. The charging party has not applied for this vacancy.

In the same October 22, 2004, letter, the charging party indicated that she felt the handling of the hiring process by the Division was "denigrating, insulting and unprofessional." The Division apologizes to the charging party for any missteps and failures in its processes. The Division prides itself on customer service and strives to be professional in all its dealings. However, that the Division did not meet the charging party's expectations is no evidence of any kind of discrimination in the hiring decision.

No. 7    Attached hereto as Exhibit 12 is an age demographic chart indicating a 2004 year end snap shot of the age distribution of both the Department of Finance and the Division of Revenue. The "New Hire" information covers hires made between July 1, 2003 and December 31, 2004.

This concludes the Division's ***ANSWER*** to the Charge of Age Discrimination.

The Division is interested in mediation. A completed Invitation to Mediate form is enclosed with the exhibits.

Please contact me if there are any questions about this response or if additional information is required.

Very truly yours,

Jos. Patrick Hurley, Jr.
Deputy Attorney General
Department of Justice, 8th Floor
State Office Building
820 French Street
Wilmington DE 19801

Attorney for Division of Revenue

Dated: January 14, 2005

Confirmation

Your confirmation number is: **125479818**

You have successfully submitted an application to the State of Delaware Personnel Office for posting **Tax Auditor II**. Your application will be forwarded to the appropriate agency.

If you have applied for a position that requires a written test, you will receive a letter scheduling you to take the test. If you have applied for a position that requires a written test that you have previously taken, and you did not indicate "Re-Test" on your application, you will receive a letter notifying you of your tested score. If you wish to re-test, you will receive a letter scheduling you to take the test. After you have tested, you will receive a letter notifying you of your score.

If you have applied for a position that is assessed based on a rating of your "Training and Experience", you will receive a letter notifying you when a score has been assigned to your application.

All notifications will be sent by the recruiting agency. If you have not received notification within 30 days, please contact the recruiting agency.

**Thank You for using our Online Employment Application!**

Close Window



STATE OF DELAWARE
DEPARTMENT OF FINANCE
OFFICE OF THE SECRETARY
**HUMAN RESOURCES**
CARVEL STATE OFFICE BUILDING
WILMINGTON, DELAWARE 19801
FAX: (302) 577-8982

March 2, 2005

Ms. Nina Shahin
103 Shinnecock Road
Dover DE 19904

Dear Ms. Shahin:

Congratulations! We have received your application for the **Tax Auditor II** position (Announcement #05-04) with the Delaware Department of Finance, Division of Revenue. Your application/resume has been reviewed, and it has been determined that you possess the necessary skills to meet the requirements for this position. Your name has been added to the Register and will remain on this list until 2/25/06.

A hiring manager will be contacting you to schedule an interview. Should you have any questions, please contact me at (302) 577-8683.

Sincerely,

James A. Platt
Human Resources

JAP/jg



STATE OF DELAWARE
DEPARTMENT OF FINANCE
DIVISION OF REVENUE
CARVEL STATE BUILDING
820 N. FRENCH STREET
P.O. BOX 8763
WILMINGTON, DELAWARE 19899-8763

April 26, 2005

Nina Shahin
130 Shinnecock Road
Dover, DE 19904

RE:    Tax Auditor II

Dear Ms. Shahin:

On behalf of the Business Audit Bureau, I would like to thank you for your recent interviews for the above referenced position.

While we found your back round appropriate for the position, another candidate was selected.

Thank you for taking the time to discuss your qualifications and interest in the position. Please continue to pursue future opportunities with the Department of Finance as they meet your future professional development and objectives.

Sincerely,

Thomas Eoppolo
Business Audit Bureau



January 20, 2005

Jos. Patrick Hurley, Jr.
Deputy Attorney General
Department of Justice, 8th Floor
State Office Building
820 French Street
Wilmington, DE 19801

Re:    Shahin v. State of DE/Department of Finance/Division of Revenue; State Case No.: 04120884

Dear Mr. Hurley:

On or about December 23, 2004 a copy of the above-referenced charge of discrimination was served upon the Respondent named therein. Included with the charge of discrimination was a copy of 19 Del. C. § 712 (c), which contains the provisions for administrative processing of charges pursuant to the newly-amended Delaware Discrimination in Employment Act. The administrative process now requires the Respondent to certify that a copy of its answer was mailed to the Charging Party. The following information pertains to your response:

☐    The answer provided on behalf of the Respondent did not include the required certification.
     Therefore, we are returning the materials to you. You may resubmit your answer along with
     a certificate of mailing to the Charging Party.

☑    The answer provided on behalf of the Respondent included materials that were not served on
     the Charging Party. Therefore we are returning those materials to you. You may resubmit
     those materials along with a certificate of mailing to the Charging Party.

☐    The Respondent has indicated an intent to supplement its response with additional materials.
     Please be advised that all additional materials submitted in response to this charge of
     discrimination must be served on the Charging Party.

Thank you for your attention to this matter.

Sincerely,

Julie Cutler

Julie K. Cutler, Administrator
Office of Labor Law Enforcement

cc: Charging Party

DOL Form D14 : 10/04

State of Delaware Department of Labor
Division of Industrial Affairs
24 NW Front Street, Suite 100
Milford, DE 19963

Attn.: Theodore R. Robinson
        Labor Law Enforcement Officer

cc:    Julie K. Cutler, Administrator

Dear Mr. Robinson:

RE:    Shahin v. State of DE/Dept. of Finance/Division of Revenue

I have received your response of 9/23/2005 and I have two serious problems with that response: one procedural and one substantive.

**Procedural Problem:** In their response dated 01/14/2005 Division of Revenue mailed the supporting documents only to your department without copies to me. Your department returned the supporting documents back to the Division of Revenue with the request to remail copies of the supporting documents back to your department and to me. It has never been done. So, when you are talking about the hired person credentials and how they are comparable to mine I cannot judge on the objectivity or subjectivity of the evidence because I have never received it. Nobody followed up on the issue, nobody bothered to make sure that I have received the documents.

**Substantive Problem:** I have filed a complained of the *systematic discrimination pattern* not just one occurrence. You took only one occurrence (which, by the way, the Department of Revenue acknowledged had been mishandled by Mr. J. Platt) and made a conclusion that there was no discrimination. When my case was referred to the mediation with participation of the Mr. David W. Adelman, it was discovered during the mediation process that the members of the team from the State of Delaware (attorney, representative from HR) claimed that for the position at that time advertised (Tax Auditor II, which was the position that they reclassified from the two positions of Tax Examiners originally advertised and for which I obtained the rank # 2 and would expect to fill if not the first position but at least the second and of which occurrence you made no mention at all in your response) I had no proper qualifications. In open discussion between the mediator, me and the members of the State of Delaware team it was discovered: **1. That I do posses the required qualifications** and **2. That I had already applied for that position contrary to the claims of the representatives of the State of Delaware.** I showed everybody in the meeting room my application with the confirmation number 125479818. The members of the team could provide no explanations, excuses, or any justification for the false claims they made or the ignorance of the existence of my application for that position. After that mediation attempt, I received a letter from your department notifying me that in view of the results of this mediation the case is referred for investigation. You did not mention anything at all about this second occurrence and

who was appointed to the position and in which way that person qualifications were superior to mine.    Neither have you mentioned anything at all about the results of investigation of the embarrassing situation during the mediation process.  As a matter of fact, Mr. J. Platt from Human Resources  mailed to me a "congratulation" letter dated with the date of   mediation (March 2, 2005)  trying to correct the mistake of ignoring my application.   That letter did not mention anything about the rank or my qualifications and appears to be out of the usual process of handling applications.  I was called for one interview only and was shocked during the interview when I realized that the job description was completely different from it was advertised.  On 4/26/2005 Mr. Thomas Eoppolo wrote me a ."thanks but no thanks letter".      Where  are you analysis or investigation results for this second incident which was related to the whole pattern?

And last but not least:  on 9/27/2005 I have applied for two positions: Tax Auditor  I (Division of Revenue) position (confirmation number 1254100868) and    State Accountant III (Division of Accounting, confirmation # 1254100865)) and I am pretty sure that my applications will be treated the same way as before with discrimination, denigration, and violation of regular process.

In view of these facts it is clear to me that you are either not adequately equipped to handle my case because you failed to investigate and analyze the case in its entirety, or specifically determined to dismiss my case regardless of  the facts and the evidence.

Sincerely,

Nine Shahs

9/29/2005

No. _____

In The

## Supreme Court of the United States

Nina and Mazen Shahin,

Petitioners

VS.

Delaware Federal Credit Union (Del-One),

Respondent

On Petition For Writ Of Certiorari

To The Supreme Court of Delaware

## PETITION FOR WRIT OF CERTIORARI

Nina and Mazen Shahin

In Pro Se Representation

103 Shinnecock Rd.

Dover, DE 19904

(302)678-1805

**QUESTIONS PRESENTED FOR REVIEW**

1. Did the Justice of the Peace Court # 16 of the Kent county of the
state of Delaware violate the petitioners' constitutional rights of
"due process" and "equal protection" guaranteed by the 14th
Amendment to the US Constitution by failing to mail to them
the defendant's response, denying them their right to question
the witness they had subpoenaed to the court, as well as denying
them the opportunity to confront, dispute and provide evidence
contrary to every statement in the defendant's response?

2. Can the appellate court (Superior Court in this particular
instance, that is the court of record and not of original
jurisdiction) ignore the issues presented to that court by both
parties including violation of constitutional rights, misread and
misinterpret the record of the lower court whose decision had
been appealed in a specific part only and then apply rules of law
to that misinterpreted record and falsified facts?

3. Can each and every appellate court in the state of Delaware as
well as the Court on the Judiciary ignore the issue of the
constitutional rights violations raised by the petitioners as if it
did not exist?

ii

4.    Were the different rules of law, legal and professional standards applied in this case at all levels of judicial process because the petitioners, who are former immigrants and now naturalized American citizens, represented themselves in a *pro se* representation?

5.    Did the Delaware Supreme Court provided cover up for the petitioners' constitutional rights violations by dismissing their complaints against the judges of Justice of the Peace and the Court of Common Pleas filed in the Court on the Judiciary and against the attorney lodged with the Disciplinary Counsel (both organizations operate under its auspices) and granting Motion to Affirm that violated all the provisions of the Rules 25(a) of the Delaware Supreme Court Rules of Civil Procedure under which it had been filed?

## LIST OF PARTIES

All parties appear in the caption of the case on the cover page.


## CORPORATE DISCLOSURE STATEMENT

Pursuant to the Supreme Court Rule 29.6 the petitioners state that they are not an incorporated entity or publicly traded company, nor are they a parent, subsidiary, or an affiliate of a publicly traded company, and, therefore, there is no publicly traded company owning 10% or more of the corporation's stock involved in this case on the part of the petitioners.

## TABLE OF CONTENTS

                                                          Page No.

OPINIONS BELOW ……………………………..            1

JURISDICTION …………………………………            2

CONSTITUTIONAL AND STATUTORY PROVISIONS

INVOLVED ………………………………………            3 - 6

STATEMENT OF THE CASE …………………...            7 - 16

REASONS FOR GRANTING THE WRIT ………            17 - 27

CONCLUSION …………………………………...            28

## INDEX TO APPENDICES

APPENDIX A: **Decision of the Delaware Superior Court**

APPENDIX B: **Transcript of hearing and the decision of the Court of Common Pleas on Respondent's Motion for Summary Judgment**

APPENDIX C: **Decision of the Justice of the Peace Court # 16**

APPENDIX D: **Decision of the DE Supreme Court on Motion to Affirm**

APPENDIX E: **Order of the DE Supreme Court Denying Rehearing**

APPENDIX F: **Respondent's Motion for Summary Judgment**

APPENDIX G: **Proof of deposit of $ 35.00 of NSF fee after the JP Court hearing and pursuant to the court order**

v

**TABLE OF AUTHORITIES CITED**

**Page No.**

**CASES:**

<u>**US Supreme Court**</u>

*Armstrong v. Manzo,* 380 U.S. (1965) ................... 19

*Baldwin v. Hale, 68 U.S. (1 Wall.) (1863)* ..................... 19

*Carey v. Piphus,* 435 U.S. (1978) ......................... 18

*Goldberg v. Kelly,* 397 U.S. (1970)......................... 18,20,21,22

*Green v. Lindsey,* 456 U.S. (1982) ....................... 19

*Green v. McElroy,* 360 U.S. (1959) ....................... 21

*Marshall v. Jerico, 446 U.S. 238, (1980)* ................. 20

*Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) .......... 19

*Mullane v. Hanover Bank & Trust Co.,* 339 U.S. (1950)  18

*Tumey v. Ohio,* 273 U.S. (1927) ........................... 20

*Richards v. Jefferson County,* 116 S. Ct. 1761 (1996) ...  18

*Robinson v. Hanrahan,* 409 U.S. (1974) ................. 19

**STATUTES AND RULES:**

14th Amendment to the Constitution of the US .......... 17,18

10 *Del.C.* § 542 (a) ............................................. 9

6 *Del.C.* § 3-103(7) ............................................. 14

vi

6 *Del.C.* § 4-103(a) ………………………………… 15

12 CFR 229.12(b) ………………………………… 7

12 CFR 229.21 ………………………………… 7, 11

12 CFR 229.2(z)(5)(nn) ………………………………… 15

Del. Super. Ct. R. 25(a) ………………………………… 14, 15

DE Lawyers' Rules of Professional Conduct:

Canon 3.1 ………………………………… 10

Canon 3.3 ………………………………… 11

**IN THE**

**SUPREME COURT OF THE UNITED SATES**

# PETITION FOR WRIT OF CERTIORARI

Petitioners respectfully pray that a writ of certiorari is issued to review the judgment below.

**OPINIONS BELOW**

[x]    For cases from **state courts:**

- The opinion of the Delaware Superior Court to review the merits appears at Appendix A to the petition and is unpublished.

- The transcript of hearing and the decision of the Court of Common Pleas of Kent County of Delaware on the respondent's Motion for Summary Judgment appears at Appendix B to the petition and is unpublished.

- The opinion of the Justice of the Peace Court No. 16 of the Kent County of the state of Delaware appears at Appendix C to the petition and is unpublished.

1

**JURISDICTION**

[x] For cases from **state courts:**

The date on which the highest state court (Supreme Court of the state of Delaware) granted the Motion to Affirm was January 24, 2007.   A copy of that decision appears at Appendix D.

[x] A timely petition for rehearing was thereafter denied on the following date: February 9, 2007 and a copy of the order denying rehearing appears at Appendix E.

The jurisdiction of this Court is invoked under 28 U.S.C. § 1257(a).

2

**CONSTITUTIONAL AND STATUTORY PROVISIONS**

**INVOLVED**

1. XIV[th] Amendment to the US Constitution

   Section 1. All persons born or naturalized in the United States,
   and subject to the jurisdiction thereof, are citizens of the United
   States and of the state wherein they reside. **No state shall make
   or enforce any law which shall abridge the privileges or
   immunities of citizens of the United States**; **nor shall any state
   deprive any person of** life, liberty, or **property, without due
   process of law; nor deny to any person within its jurisdiction
   the equal protection of the laws.**

2. Regulation CC issued by the Board of Governors of the Federal
   Reserve System that adopted by that Regulation the EXPEDITED
   FUNDS AVAILABILITY ACT (EFA) enacted on August 10,
   1987.

   > Subpart B "Availability of Funds and Disclosure of Funds
   > Availability Policies"
   >
   > § 229.12 "Availability Schedule"

3

**§ 229.12(b)**

**Local checks must be made available for check writing**

**purposes by the second business day following deposit**

§ 229.21 "Civil Liability"

***Statutory Penalties***

Section 229.21(a) sets forth the statutory penalties that can

be imposed as a result of a successful individual or class

action suit brought for violations of Subpart B of the

regulation. Basically, a bank could be held liable for:

- **Actual damages**

- **Not less than $ 100 nor more than $ 1,000 in the
case of individual action;**

- The lesser of $ 500,000 or one percent of the net worth
of the bank involved in the case of a class action; and/or

- **The costs of the action together with reasonable
attorney's fees as determined by the court.**

3. State of Delaware Supreme Court Rules of Civil Procedures

Rules 25. Expedited Procedure

(a) Motion to affirm -- Within 10 days after service of appellant's

opening brief, appellee may, in lieu of a brief, serve and file a

4

motion to affirm the judgment or order of the trial court. The motion shall not exceed four pages in length. The filing of the motion tolls the time for filing of appellee's brief. If there is more than one appellee in an appeal, the filing of a motion to affirm by one appellee tolls the time for filing of all the appellees' briefs. The sole ground for such motion shall be that it is manifest on the face of appellant's brief that the appeal is without merit because:

**(i)**   Law settled. -- The issue on appeal is clearly **controlled by settled Delaware law;**

(ii)   Factual issue.—The issue on appeal **is factual** and clearly **there is sufficient evidence to support** the jury verdict or **findings of fact below**; or

(iii)   Exercise of discretion. -- The issue on appeal is one of judicial discretion and **clearly there was no abuse of discretion**. The motion to affirm shall state the ground or grounds on which it is based together with citation of authorities and record references to evidence relied upon. There shall be no briefing, argument or response to the motion, unless requested by the Court. If the motion to affirm shall be granted by unanimous action of a panel of the

5

Court an order or opinion will be entered and a mandate will issue thereon; if the motion shall not be unanimously granted, it shall be denied. If the motion shall be denied, the appellee's brief will be due within 20 days after such denial, and the appeal will proceed through briefing, scheduling and disposition as provided by these Rules.    The motion to affirm shall be substantially in the form set forth in Official Form G. A motion to affirm shall not be accompanied by a proposed form of order.

**All highlights are made by the Petitioners**

6

## STATEMENT OF THE CASE

• Petitioners, Mazen and Nina Shahin, filed a civil debt action lawsuit in the Justice of the Peace Court No. 16 of Kent county of the state of Delaware on June 28, 2005 against the Delaware Federal Credit Union (DEFCU), presently called Del-One, after its employee misclassified a local check as nonlocal and the Credit Union denied the petitioners timely access to their funds in violation of the 12 CFR 229.12(b), charged their account $ 35.00 of Non Sufficient Funds (NSF) fee that was not restored to the petitioners' account until after the JP Court mandated them to do so at the court hearing on September 6, 2005[1]. The judge of the JP Court, Pamela Darling, determined in the court that the NSF fee of $ 35.00 (the debt) was still owed and not paid for more than two months but dismissed the case with prejudice on the respondent's promise to pay denying the petitioners' the statutory penalties they were entitled to under 12 CFR 229.21. Although the judge ruled on $ 35.00 of NSF fees in the petitioners' favor[2], dismissal of the case with prejudice and the denial of statutory penalties were based on the facts that the

---

[1] DEFCU deposit slip at Appendix G, deposit time 3:12pm.

[2] Appendix C, page 1.

7

respondent claimed in their response to the petitioners' lawsuit.
That response was not mailed to the petitioners neither by the court
nor by the respondent, they did not know its content during the court
hearing on September 6, 2005, and the discussion of the facts
mentioned in that response was limited only to the judge and the
respondent.  The petitioners were not allowed to speak, their request
to question a witness they had subpoenaed[3] to the court was denied,
and their attempts to dispute facts claimed by the respondent were
suppressed by the judge.

- On September 21, 2005 the petitioners filed an appeal at the Court of
  Common Pleas of Kent County of the state of Delaware seeking the
  statutory damages denied to them by the JP court to which they were
  entitled to as a matter of federal law since the $ 35.00 of NSF charge
  was paid to their account three hours after the court decision on
  September 6, 2005 that the judge delivered at approximately
  1:15pm[4].  On November 18, 2005 the attorney for the respondent
  filed a Motion for Summary Judgment attaching to the Motion a
  notarized copy of the DE FCU properly sworn employee's affidavit

---

[3] Appendix C, end of entry # 2, page  2.

[4] Ibid, entry # 7, page 3  (time of scheduled hearing was 1:00 pm) .

8

with falsified facts to greater degree than those that had been presented to the JP Court.[5]   Ridiculous and false claim that the petitioners refused the payment of NSF fee in JP Court was added. Although the issue of perjury (or making false statements of facts in written, notarized form of sworn affidavit to court as evidence) and gross violations of the petitioners' constitutional rights were raised in the court papers filed in the Court of Common Pleas as well as during hearing on Motion for Summary Judgment[6], the presiding judge, Merrill C. Trader, granted the motion on the fact that the $ 35.00 of NSF had been paid before the hearing on the Motion  held on December 21, 2005, fact completely irrelevant to the petitioners' claim on appeal for statutory damages after the fact of violation of Regulation CC had been established in JP Court.

- On January 11, 2006, the petitioners filed an appeal in the Delaware Superior Court under 10 *Del.C.* 542 (a) that gives "full power and authority" to the Superior Court "to examine, correct and punish the

---

[5] Motion for Summary Judgment at Appendix F. Note, that the Affidavit attached to the Motion is signed by the same compliance officer (Reneé Thompson) as the note to the deposit slip in reference 1 above.

[6] Appendix B, page 11 and 15.

9

contempts, omissions, neglects, favors, corruptions and defaults of
***all justices of the peace*** (emphasis is added by the petitioners),
sheriffs, coroners, clerks and other officers, within this State". In
their opening brief the petitioners raised four issues for the Superior
Court to consider including the detailed analysis of all elements of
the "due process" and "equal protection" that is presented in the
following section of "Reasons for Granting Writ of Certiorari".
Although in the Court of Common Pleas the attorney for the
respondent said "quite frankly the fact that the $ 35 has been paid
since September of 2005, clearly the case is over at that point, and
her ability to get court costs, and interest, we would respectfully
argue is moot at this point"[7] in his answering brief  made a false
claim that the petitioners were seeking on appeal both $ 35 of NSF
fees and damages and, therefore, they do not have a claim upon
which a relief can be granted since $ 35.00 had already been paid.
That claim was made in violation of requirement of canon 3.1 of the
Delaware Lawyers' Rules of Professional Conduct that does not
allow attorneys make frivolous or unsubstantiated claims. In the
Court of Common Pleas he made false statement of fact regarding

---

[7] Appendix B, page 4.

10

respondent's offer to pay in violations of requirement of canon 3.3(a)(1) of the Delaware Lawyers' Rules of Professional Conduct that does not allow attorneys make false statements of fact. When he claimed that the petitioners had a "moot" claim for damages he failed to disclose the mandatory statutory damages imposed by the 12 CFR 229.21, the obligation he had under requirement of canon 3.3(a)(2) of the Delaware Lawyers' Rules of Professional Conduct. In the petitioners' reply brief they raised an additional issue of the attorney's violations of rules of professional conduct. Judge of the Superior Court, Robert R. Young, ignored all the issues presented to him by both parties and made the following determination: "The Magistrate held in favor of DFCU after learning that DFCU credited the Shahin's account for $ 35 NSF".[8]    As a matter of fact, the decision of the Justice of the Peace Court was completely opposite: "On September 6, 2005 judgment by trial was entered by Justice of the Peace Court No. 16 in favor of Nina Mazen Shahin and against DE Federal Credit Union for $ 35.00"[9] So, the judge of the Superior

---

[8] Appendix A, page   2.

[9] Appendix C, page  1.

11

court by his decision denied the fact of violation of Regulation CC established by the JP Court.

Although the judge had an obligation to state the evidence he relied upon in reaching that conclusion his reference was not made to the only source that the reference can be made to in this case – the decision of the JP Court itself, but to some foggy claim that the payment was made on the day of the JP Court hearing of unknown origin but very similar to the claim repeatedly made by the respondent's attorney.    The judge also claimed that the Court of Common Pleas presented the petitioners an opportunity of hearing *de novo* review of their original claim for $ 35.00 of NSF fee.   The scope of hearing on Summary Judgment, as he himself correctly indicated, was supposed to be on "genuine issues of fact" not the hearing *de novo* on one selectively chosen issue that had no relevance to the essential facts disputed by the parties and never proven in court.    The fact of violation of Regulation CC was acknowledged by the defendant as an "error". At that stage of the judicial process the fact of payment of $ 35.00 became irrelevant because at the time the decision of the JP Court was rendered the $ 35.00 of NSF fee had not been paid for more than two months in

12

fragrant violation of the federal law, the fact clearly established in the decision of the JP Court and the petitioners were entitled to statutory damages as a matter of law and that was the sole issue of their appeal claim along with the facts on basis of which those statutory damages were denied.   The respondent presented their version of these facts in their Motion for Summary Judgment[10] accompanied by a written and sworn affidavit; the petitioners presented theirs in their Motion To Deny Summary Judgment and the consideration of those facts was supposed to be the matter of hearing on the Motion for Summary Judgment. Judge of the Superior Court failed to notice all these discrepancies although apparent in the transcript of the hearing and the decision of the Court of Common Pleas. He also failed to address the issue of the petitioners' constitutional rights violations presented and analyzed in detail in their opening brief.

- On September 1, 2006, petitioners filed an appeal to the Supreme Court of Delaware making a detailed analysis of violations of their constitutional rights in their opening brief, the gross misinterpretation of the facts and the decision of the JP Court by the

---

[10] Attachment F and also reference # 5 above.

13

Superior Court judge and raising questions of abuse of judicial discretion by the judges of JP Court and the Court of Common Pleas. On November 20, 2006, the attorney for the respondent filed a Motion to Affirm under the Delaware Supreme Court Rule of Civil Procedure 25(a). The provisions of that rule are presented verbatim in the section On Constitutional and Statutory Provisions of this Petition and bar filing of the Motion with specifics of the petitioners' case. In § 25(a)(i) it is stated that the case should involve the "settled Delaware law". Although the attorney mentioned in his Motion the "settled Delaware law" he did not make any specific references to any such a law, case, regulation, rule, or anything of like kind, when, as a matter of fact, such a "settled DE law" is the Delaware Constitution that incorporated Uniform Commercial Code in Title 6 of the Constitution, in Article 3 defined Negotiable Instruments and in Article 4 of the Title 6 regulated bank deposits and collections. In Article 3, **§ 3-103 Definitions** of the DE Constitution the standard of "ordinary care" is defined "in the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in

14

which the person is engaged." The standard of "ordinary care" so defined was violated by the DEFCU. In Article 4, **§ 4-103(a) Variation by agreement; measure of damages; action constituting ordinary care** the Delaware Code in subsection (a) states that "The effect of the provision of this Article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure". Standard of "good faith" is not defined in DE Code but is defined in §229.2(z)(5)(nn) of Regulation CC as "honesty in fact and observance of reasonable commercial standards of fair dealing". DEFCU violated the standards of "ordinary care" as defined in the DE Code and of "good faith" as defined in federal Regulation CC. The remaining provisions of (ii) and (iii) of the Supreme Court Rule of Civil Procedure 25(a) were violated because the petitioners' in their opening brief specifically raised the issues of falsified facts by the Superior Court and the abuse of discretion by judges of JP Court and the Court of Common Pleas but the Supreme Court of Delaware affirmed that Motion on January 24, 2007.[11]

---

[11] Appendix D.

15

• On  January 29, 2007,  the petitioners filed a Motion for Rehearing

but the Supreme Court found it meritless on 2/9/2007[12].

---

[12] Appendix E.

**REASONS FOR GRANTING THE PETITION**

**1.** Supreme Court of the United States is the court of last resort in defending constitutional rights violated by other courts especially the constitutional rights of "due process" and "equal protection" that are supposed to guarantee the fairness and evenhandedness of the US judicial process to everybody.

- Definitions of "due process" and "equal protection" of the Fourteenth Amendment to the Constitution of the United States that were developed over the years by courts established, as necessary prerequisites, 7 elements necessary to determine whether the violation of those rights occur, five of which apply to the petitioners' case: 1. Notice, 2. Hearing, 3. Impartial Tribunal, 4. Confrontation and Cross-Examination, 6. Decision on Record. The fifth and seventh elements of Discovery and Counsel respectively do not apply to this case, and, therefore, are not analyzed here. The substantial, if not exclusive, contribution to the development of the definitions of those elements belongs to the Supreme Court of the United States. "Procedural due process rules are meant to protect persons not from the deprivation, but from the ***mistaken or unjustified*** deprivation of life, liberty, or property" (emphasis

17

added by the petitioners), *Carey v. Piphus,* 435 U.S. 247, 259 (1978). Since petitioners' case is related to a debt claim which is a claim for property (money is considered property) the analysis of the requirements developed by case law that follows is relevant in regard to the last of those three pillars (life, liberty and **property**) for the protection of which the "due process" and "equal protection" clauses of the Fourteenth Amendment are specifically intended.

1. Notice            "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them ***an opportunity to present their objections"***, (emphasis added by the petitioners) *Mullane v. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). See also *Richards v. Jefferson County,* 116 S. Ct. 1761 (1996) (*Res Judicata* may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected). "The notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest", *Goldberg v. Kelly,* 397 U.S. 254, 267-268 (1970).

18

Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed ***receives it*** (emphasis added by the petitioners), *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *Robinson v. Hanrahan,* 409 U.S. 38 (1974); *Green v. Lindsey,* 456 U.S. 444 (1982). **We, the petitioners, were denied a proper notice of the respondent's response to the JP Court and the opportunity to prepare adequately to prove that all claims made in that response were false. Neither the JP Court nor the respondent bothered to mail to the petitioners the respondent's response to the lawsuit initiated by the petitioners.**

2. Hearing          "Some form of hearing is required before an individual is finally deprived of a property interest", *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). ***"Parties whose rights are to be affected are entitled to be heard"*** (emphasis added by the petitioners), *Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863).* **The petitioners were deprived of any meaningful hearing in both courts: in JP Court they were not allowed to speak at all, in Court of Common Pleas the petitioner was not allowed to complete a sentence, was dismissed as perceived to be insincere, incorrect or**

19

**incompetent on a sole ground that she was a woman, a foreign-born, and *pro se.***

3. Impartial Tribunal Just as in criminal and quasi-criminal cases (*Tumey v. Ohio*, 273 U.S. 510 (1927) "an impartial decision maker" is an "essential" right in civil proceedings as well (*Goldberg v. Kelly*, ibid above, pages 254, 271). "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken *on the basis of an erroneous or distorted conception of the facts or the law...*(emphasis added by the petitioners) At the same time, it preserves both the appearance and reality of fairness... by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him", (*Marshall v. Jerico, 446 U.S. 238, 242 (1980)*). **In the JP Court the petitioners were not allowed to speak let alone present any evidence and were denied the right to question a witness they had subpoenaed to the court to disprove facts alleged by the respondent.** In the Court of Common Pleas the judge accepted false statements of fact made by the attorney (for example, "Essentially, what happened is the defendant came into court, told the Court that they were willing to

20

credit the plaintiffs' account in the amount of $ 35, which had been refused by plaintiff, and then based upon that statement, the Court essentially found, or dismissed it with prejudice...".[13] But when the petitioner mentioned in that court that "We have the right to present, because what the Judge claim, and what the defendant-appellee claim is not true..." the dismissive answer of the judge was, "Well, you did present your case, he just ruled against you".[14] **The petitioners were denied the opportunity to present their evidence in either JP Court or the Court of Common Pleas because of apparent biases.**

4. Confrontation and Cross-Examination     "In almost every setting where important decisions turn on question of fact, due process requires an opportunity to confront and cross-examine adverse witnesses" (*Goldberg v. Kelly,* Ibid above, pages 254, 269). Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or person motivated by malice, vindictiveness, intolerance, prejudice, or jealousy, the individual's right to show that it is untrue depends on the right of confrontation and cross-examination" (*Green v. McElroy,* 360 U.S. 474, 496 (1959). **The petitioners were intentionally**

---

[13] Appendix B, page 7.

[14] Ibid, page 11.

21

**deprived of that opportunity in the JP Court and were not given that opportunity in the Court of Common Pleas and as a result were deprived of statutory damages based bias on perjury.**

6. Decision on the Record      "The decisionmaker's conclusions as to a recipients' eligibility must rest solely on the legal rules and evidence adduced at the hearing…To demonstrate compliance with this elementary requirement, the decisionmaker should state the reason for his determination and indicate *the evidence he relied on …"* (emphasis is added by the petitioners) *(Goldberg v. Kelly,* 397, Ibid, 254,271). The judge of the JP court stated the reasons for denying the petitioners the statutory damages and dismissal with prejudice as lack of notice to the respondent of the mistake committed by its employee and their offer to pay that had been allegedly refused by the petitioners[15]. None of these facts was proven in her court but accepted without any proof or cross-examination although all these claim were false statements of fact. One of the petitioners met with the manager of the branch immediately after receiving the first NSF Notice around June 23, 2005, asked her to look into the issue and provide a copy of the check that caused the overdraw. The manager,

---

[15]  Appendix C, entry # 9, page 3.

Lisa Brewer, had refused to look into the issue but promised to call back and inform of the cost of getting a copy but she never called back.    When the petitioners obtained a second NSF Notice they informed the teller of the branch by name  Danielle Johnson on June 28, 2005 of the mistake but she sarcastically dismissed the notice laughing into the petitioner's face.    In these circumstances nothing petitioners could do more to provide any further notice or change the employees' attitudes but to file a lawsuit.    As far as the second reason of offering to pay is concerned, the petitioners could not believe that any reasonable person, let alone a judge or the attorney who were supposed to have a legal mind, could make and repeat such a claim. The respondent violated the federal law and had no any right of "offer to pay" but an unconditional obligation to pay the erroneously taken amount as soon as they learned about the mistake but they did not. They did not pay the amount for more than two months knowingly and intentionally violating federal law for all that period.    Their "offer to pay" was actually an aggravated harassment as a result of which one of the petitioners was rushed to an emergency room with a high blood pressure.    **But the petitioners were never allowed to present this evidence and have a court listen and accept it.**

23

2.  The Delaware Superior Court is a court of record which means that it examines the records of previous courts. Instead, the court falsified the facts that established the violation of federal law and the JP Court ruling on that point in favor of the petitioners that were reflected in the record of the JP Court decision. The Superior Court ignored 4 issues presented to it by the petitioners in their Opening Brief, one false statement of fact on which the attorney for the respondent based his entire legal argument in his Answering Brief, and emphasis of that fact in the petitioners' Reply Brief. That attitude of the court contradicts the basic premise of the system of justice where the court decides on the issues presented to it for a decision but not misinterprets facts that are not even in dispute between the parties but which the court does not like. There is no document or statement in existence in which respondent claimed that the NSF fee had been paid to the petitioners' account before the JP court hearing on 9/6/2005. The claim that the NSF fee was paid on 9/6/2005 does not mean that it was paid before the court hearing but the Superior Court makes such an inference of fact without any basis for the conclusion. The same court also denied the petitioners access to the tape of the

24

Court of Common Pleas hearing that contained in the transcript unauthorized addition, mistakes and omissions.

3. Petitioners believe that if they were represented by an attorney they would not have been gagged and dismissed in courts as they were and would not have been denied the basic constitutional rights of "due process" and "equal protection" and the attorney would not allowed himself to make false statements of fact in different courts or to file unsubstantiated, frivolous claims and file motions in violation of court rules. As a result, perjury was not prosecuted but gratified in the decisions of the courts at all levels.

4. On 08/14/2006 the petitioner filed a complaint with the Court on the Judiciary against the judges of the JP Court and Court of Common Pleas on violation of their constitutional rights. On 10/16/2006 the petitioner received a dismissal of their complaint in which it was written: "It is clear from the face of the complaint that the allegation of judicial misconduct (a) stem from the Complainant's disagreement or dissatisfaction with the judicial officers' legal rulings; (b) do not allege judicial misconduct; or (iii) allege judicial misconduct in a conclusory or conjectural fashion that does not invoke the jurisdiction of the Court on the

25

Judiciary. Where the Complainant suggests that either Judge
Trader or Judge Darling abused the court's discretion, erred
during the courts' proceedings, or erred in the disposition of her
case, the Complainant's claim were, or could have been, subject to
appellate review". On 04/25/2006 the petitioner filed a complaint
against the attorney with the Delaware Disciplinary Counsel.
The response dated 05/01/2006 that the petitioner received stated
the following: "This Office has carefully reviewed your complaint
and its attachments. The allegations you have raised in your
complaint concerning Mr. Morris relate to matters in dispute in
pending litigation. When allegations of lawyer misconduct relate
to matters that already have been presented to or are not pending
before a court, this Office does not usurp the court's fact finding
or legal analysis of those issues. If the court believes that the
record in a matter or a lawyer's conduct in a matter before the
court raises issues of ethical misconduct that should be
investigated by this Office, the court can refer those issues to this
Office. Based upon the foregoing, this file is now closed. ...
Please be aware that pursuant to Procedural Rules 13 and 25, all
records and proceedings in this matter are private and confidential

26

and are not subject to production in any later proceedings before any tribunal". With no any meaningful enforcement mechanism for rules of professional conduct in the state of Delaware for judges and the attorney, the attorney proceeded to file his Motion to Affirm with the Delaware Supreme Court in response to the petitioners' Opening Brief to which he had no any argument left to present, so he filed the Motion to Affirm in violation of all three stipulations under which the Motion can be filed. Moreover, when the Supreme Court affirmed the Motion the petitioners contend that the Court provided cover up to the attorney and the judges who violated their respective rules of professional conduct (either very specific or general rules of professional honesty, integrity, impartiality and fairness).

27

## CONCLUSION

In view of gross of violations of the basic constitutional rights of "due process' and "equal protection",  provisions of the Expedited Funds Availability Act (Regulation CC) at two Delaware courts where hearing was supposed to be fair to both parties but it was not, complete disregard of those violations by the Superior and Supreme Courts of Delaware as well as local rules of civil procedures and professional standards for judges and the attorney alike which demonstrated serious biases in Delaware judicial system as a whole towards people of foreign origin as a class, *pro se* representatives as a class or both without any meaningful mechanism for enforcement of ethical rules this petition for writ of certiorari should be granted.

Respectfully submitted,

**Mazen Shahin**

**Nina Shahin**

Date:  3/26/2007

28

**APPPENDICES**

**APPENDICES**

29

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

NINA and MAZEN SHAHIN,   :

        Appellants,         :      C.A. NO. 06A-01-004

   v.                      :

DELAWARE FEDERAL          :
CREDIT UNION,             :

       Appelle.

Submitted: May 2, 2006
Decided: August 3, 2006

Nina and Mazen Shahin, *pro se.*

Gregory A. Morris, Esq., Liguori, Morris & Yiengst, Dover,

Delaware for Appellant.

*OPINION*

UPON CONSIDERATION OF APPELLANT'S APPEAL FROM
FROM COURT OF COMMON PLEAS
**DENIED**

Young, Judge

**APPENDIX A, page 1**

*Shahin v. Delaware Federal Credit Union*
C.A. No: 05C-08-037
August 3, 2006

Appellants, Nina and Mazen Shahin, bring the present appeal

from a decision of the Court of Common Pleas, which granted

summary judgment to appellee, Delaware Federal Credit Union

("DFCU"). This case is a debt action, which originated in the Justice

of the Peace Court, and was appealed to the Court of Common Pleas.

In both of the proceedings below, the Court found in favor of DFCU.

For the following reasons, the Shahins' appeal is **DENIED.**

### FACTUAL AND PROCEDURAL HISTORY

The Shahins initiated their claims against DFCU in the Justice

of the Peace Court, seeking reimbursement for a $ 35.00 fee assessed

to their account for insufficient funds ("NSF fee"). The Magistrate

held in favor of DFCU after learning that DFCU credited the Shahins'

account for the $ 35.00 NSF fee.[1] The Shahins appealed the

---

[1] DFCU admits that it assessed the Shahins the $ 35.00 NSF fee in error. The
parties dispute whether the Shahins advised DFCU directly of the error. DFCU
claims it did not learn of the problem until they were served with the JP Court
complaint. DFCU credited the Shahins account for the NSF fee on the day of the JP
Court hearing.

**APPENDIX A, Page 2**

*Shahin v. Delaware Federal Credit Union*
C.A. No: 05C-08-037
August 3, 2006

Magistrate's decision to the Court of Common Pleas, which granted

DFCU's motion for summary judgment. The Shahins made a timely

appeal of the decision of the Court of Common Pleas to this Court on

January 11, 2006.[2]

In preparation for the Superior Court appeal, the Shahins

obtained a copy of the transcript of the proceedings in the Court of

Common Pleas, and complained that the transcript contained errors.[3]

The Court of Common Pleas denied the Shahins' request to review

the tape of December 21, 2005 hearing and submit corrections of the

transcript errors. The Shahins filed a similar motion with this Court,

seeking to review the tape and correct the hearing transcript. At oral

argument on March 3, 2006, this Court considered the Shahins'

---

[2]  10 Del.C. § 1326(b).

[3]  Record of the parties' oral argument before the Court of Common Pleas on the
summary judgment motion was recorded by Court of Common Pleas Reporter
Linda Lavender. An audiotape of the proceeding was also prepared. The Shahins
argue that the transcript contains mistakes, omissions, and unauthorized additions.

**APPENDIX A, Page 3**

*Shahin v. Delaware Federal Credit Union*
C.A. No: 05C-08-037
August 3, 2006

motion as an appeal of the Court of Common Pleas decision, and

denied their request.

The Shahins now present their brief in support of their appeal of the

decision of the Court of Common Pleas on DFCU's motion for

summary judgment.

## STANDARD OF REVIEW

When considering an appeal from the Court of Common

Pleas, this Court's function is similar to that of the Delaware Supreme

Court.[4] "In reviewing appeals from the Court of Common Pleas, the

Superior Court must limit its scope of review to correcting errors of

law and ascertaining whether the trial judge's factual findings 'are

adequately supported by the record and are the product of an orderly

and logical deductive process.'"[5] This Court must accept any

---

[4] *Baker v. Connell,* 488 A.2d 1303, 1309 (Del. 1985).

[5] *Romain v. State Farm Mutual Auto. Ins. Co.,* 1999 WL 1427801, at *1 (Del.

Super.)(citing *Wyatt v. Motorola, Inc.,* 1994 WL 714006, at *2(Del. Super.)).

**APPENDIX A, Page 4**

*Shahin v. Delaware Federal Credit Union*
C.A. No: 05C-08-037
August 3, 2006

decision of the Court of Common Pleas that is supported by sufficient evidence.[6] However, when reviewing a summary judgment decision on appeal, "the applicable standard requires that this Court examine the record below *de novo* to determine whether the court below correctly applied the applicable legal principles."[7]

## DISCUSSION

The Shahins make several arguments about the propriety of the proceedings, not only at the hearing in the Court of Common Pleas, but also in the Justice of the Peace Court. The scope of this Court's review is limited to the issues the parties raised at trial, and this Court will not hear issues the parties did not raise and address before the lower court.[8]

---

[6] *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del. 1972); *Wilson v. Klabe Construction Co.,* 2004 WL 1732217, at *2(Del. Super.).

[7] *Baldwin v. Conner,* 1999 WL 74327, at *2(Del. Super.)(*citing Hoechst Celanese Corp. v. Certain Underwriters at Lloyds,* 656 A.2d 1094, 1098 (Del. 1995)).

[8] *Pringle v. Atlantic Millwork,* 1998 WL 47275, at *4(Del. Super.)(*citing Wilmington Trust Co. v. Conner,* 415 A.2d 773 (Del. 1980)).

**APPENDIX A, Page 5**

*Shahin v. Delaware Federal Credit Union*
C.A. No: 05C-08-037
August 3, 2006

Summary judgment should be rendered if the record shows that there is no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law.[9] The facts must be viewed in the light most favorable to the non-moving party.[10] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law to the circumstances.[11] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[12]

In the Court of Common Pleas appeal, which was a *de novo* proceeding, DFCU argued that the Shahins' claim was without merit, because the $ 35.00 NSF fee had been credited to the Shahins' account. In fact, there was no dispute that the Shahins had been

---

[9] Super. Ct. Civ. R. 56(c).

[10] *Guy v. Judicial Nominating Comm'n,* 659 A.2d 777, 780 (Del. Super. Ct. 1995).

[11] *Ebersole v. Lowengrub,* 180 A.2d 467, 468-69 (Del. 1967).

[12] *Wootten v. Kiger,* 226 A.2d 238, 239 (Del. 1967).

**APPENDIX A, Page 6**

*Shahin v. Delaware Federal Credit Union*
C.A. No: 05C-08-037
August 3, 2006

reimbursed for the improperly assessed NSF fee.[13]  The record shows

that DFCU credited the Shahins account on September 6, 2005, the

day of the Justice of the Peace hearing.  However, the Shahins argue

that they are entitled to interest and court costs.  The Court of

Common Pleas denied their claim, however, ruling that interest costs

cannot be awarded when there is no claim upon which relief can be

granted.

     The Court of Common Pleas did not err in determining that no

genuine issue of material fact existed as to the Shahins' claim that

---

[13] Court of Common Pleas transcript at 8

THE COURT:    Well, you sued for $ 35; they credited the $ 35 in the court below,

                didn't they?

MS SHAHIN:    The credited only for 35 after the Court, after this hearing, not

                before.

*****

THE COURT:    But, before you came here they credit it?

MS SHAHIN:    No. Oh, before I came here?

THE COURT:    Yes.

MS SHAHIN:    Yes.

**APPENDIX A, Page 7**

*Shahin v. Delaware Federal Credit Union*
C.A. No: 05C-08-037
August 3, 2006

DFCU owed them $ 35.00 for the NSF fee, because the evidence shows that the Shahins received reimbursement. There is no dispute that the Shahins were paid; therefore, summary judgment was appropriate. Having determined that DFCU is entitled to judgment as a matter of law, the Shahins' claim for interest and costs cannot be considered.

Finally, the Shahins complain, *inter alia*, that they were not afforded due process, because the Justice of the Peace Magistrate engaged in *ex parte* communications with DFCU.[14] The Shahins also complain that their due process rights were violated by the Court of Common Pleas, because their claims were not considered *de novo*. The Shahins' claim that the Court of Common Pleas proceeding was

[14] The Shahins were not served with a copy of DFCU's answer to the complaint in the Justice of the Peace action. At the hearing before the Magistrate, the Shahins complained that the Justice of the Peace Court should have taken the initiative and served them with DFCU's answer. Because the Court received DFCU's answer, but the Shahins did not, the Shahins accused the Court of engaging in *ex parte* communications with DFCU.

**APPENDIX A, Page 8**

not a *de novo* review is without merit. The record of the proceedings in the Court of Common Pleas is clear that the Shahins did receive a *de novo* review of their original claim for the $ 35 NSF fee. The hearing on the motion for summary judgment focused on the Shahins' original complaint. Ironically, the Shahins arguments about the propriety of the proceedings in the Justice of the Peace action contradict their wish for a *de novo* review and are inappropriate.

## CONCLUSION

For the reasons stated above, the Shahins' Appeal from Defendants' Motion for Summary Judgment is **DENIED.**

**"/s/ Robert B. Young"**
**J.**

RBY/sal
oc: Prothonotary
cc: Opinion Distribution

**APPENDIX A, Page 9**

IN THE COURT OF COMMON PLEAS FOR THE STATE OF

DELAWARE IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| MAZEN SHAHIN, and | ) | Civil Action Number |
| NINA SHAHIN, | ) | 05-09-0074AP |
| | ) | |
| Plaintiffs/Appellants, | ) | |
| vs. | ) | |
| | ) | |
| DELAWARE FEDERAL | ) | |
| CREDIT UNION, | ) | |
| | ) | |
| Defendant/Appellee, | ) | December 21, 2005 |

- - - - -

BEFORE:

HONORABLE MERRILL C. TRADER

- - - - -

APPEARANCES:

NINA SHAHIN
*Pro se.*

GREGORY A. MORRIS, ESQUIRE
on behalf of the Defendant.

LINDA A. LAVENDER
Official Court Reporter

**STAMP**
"COPY"

**APPENDIX B, Page 1**

Court of Common Pleas
December 21, 2005

Present: As noted.

THE COURT:          All right. This is the time, or it's a little

past the time, that we scheduled a hearing on a motion for

summary judgment.

How do you pronounce your name?

MS. SHAHIN:    Shahin, Nina Shahin.

THE COURT:    Nina Shahin, and Mazen Shahin versus...

MS. SHAHIN:    Shahin, just Shahin.

THE COURT:    Shahin vs. Delaware Federal Credit Union.

It looks like there are two cases, and it looks like one case

there was a judgment entered for $ 35 and another case a

judgment was entered on behalf of the defendant.

I suppose there's been some confusion, and

that the end result of the case was judgment for the defendant.

Is that right, Mr. Morris?

MR. MORRIS:    Yeah, that's correct, Your Honor, and the

motion I filed only deals with the one case, the other one just

came up just recently.

**APPENDIX B, Page 2**

THE COURT:    Well, it should really cover both; do you ask it cover both?

MR. MORRIS:    It could essentially, Your Honor.    I mean both, essentially both decisions were on behalf of the Delaware Federal Credit Union.    It was all concerning this $ 35 payment, which actually the Delaware Federal Credit Union made back on September 6, 2005, which credited the account. In fact…

THE COURT:    Did the Magistrate first make one decision and then later on he made a different decision?

MR. MORRIS:    Well, no, there were two separate cases filed.

THE COURT:    There were two cases?

MR. MORRIS:    They're two separate cases, at least, and she can correct me if I'm wrong, but there were two separate cases filed.

THE COURT:    I see.

MR. MORRIS:    The first one, which I filed the motion for summary judgment on, was actually a defendant's verdict in

**APPENDIX B, Page 3**

one respect, and a plaintiffs' verdict in the other respect.

Essentially what happened is the defendant came into court, told the Court that they were willing to credit the plaintiffs' account in the amount of $ 35, which had been refused by plaintiffs, and then based upon that statement, the Court essentially initially found, or dismissed it with prejudice, but the docket sheet seems to indicate they entered judgment for $ 35 for the plaintiffs without court costs, and interest.

It was at that point that the plaintiffs then appealed to this court. Quite frankly the fact that the $ 35 has been paid since September of 2005, clearly the case is over at that point, and her ability to get court costs, and interest, we would respectfully argue is moot at this point.

The second case I did not file the motion on, because it just came up, so I feel I little unprepared to deal with that one at this point, because I don't know all one hundred percent of the facts, because I didn't represent Delaware Credit Union at either one, at the court below; I've just been taking the cases up once they've been appealed, but

**APPENDIX B, Page 4**

at least as to the one at this point, feel that there is no action

whatsoever, because…

THE COURT:        Okay. Now, the one that…

MS SHAHIN:        Your Honor, can I now correct, and add?

THE COURT:        Just let me finish with counsel for a minute,

then I'll let you make some kind of statement, or argument.

Well, the October 17th judgment in favor of Dover Federal

Credit Union against the plaintiffs that is the case that

apparently your motion does not cover?

MR. MORRIS:        That is correct, Your Honor. The one I…

THE COURT:        And you do not want to cover it?

MR. MORRIS:        Well, again, I didn't even bring that file

with me when I filed this motion, in fact. So I don't have it in

front of me, but maybe if I could ask the Credit Union.

                    (PAUSE).

MR. MORRIS:        It's my understanding, Your Honor, they're

two separate matters.

The court:          They're two separate matters?

MR. MORRIS:        Two separate matters, even…

**APPENDIX B, Page 5**

MS. SHAHIN:     It's the same matter, two separate incidents.

MR. MORRIS:     Two separate incidents, so I respectfully submit that probably my motion will not be able to address the second one today unfortunately.

THE COURT:     But, doesn't it involve the $ 35 fee?

MR. MORRIS:     Yeah, but I think they may have sued for a little bit more, because there was an extended hold, and the first $ 100 of the thing would have gone to the account, so they weren't just suing for the $ 35 I don't believe, and may be she can correct me if I'm wrong in that regards, but I think, they're two separate issues.

THE COURT:     The complaint states exactly…well, no, it's a little different.

MR. MORRIS:     It's a little different, Your Honor, it's the…

THE COURT:     All right. Okay. Tell me what you want to tell me about your motion for summary judgment, and this is the case.

MS SHAHIN:     Now?

THE COURT:     No, the defense attorney goes first, he

**APPENDIX B, Page 6**

hadn't made an argument yet.

MR. MORRIS:    Your Honor, I think, my motion speaks for itself. Essentially what the plaintiffs did, they filed an action against the Delaware Federal Credit Union, for $ 35, court costs, and interest as a result of it was a hold put on a check, and as such they were debited $ 35, or they were charged $35.

When Delaware Federal Credit Union agreed to reimburse them the $ 35 when they realized the error, it was refused by plaintiffs. However, when the Court was informed of that, that the Delaware Federal Credit Union was willing to credit their account for $ 35, that's when the Court found essentially in favor of the defendant at that point, and in fact $ 35 was placed on their account on September 6, 2005 which was the very day they were in court.

THE COURT:    Well, this is the case where the judgment was entered in their behalf?

MR. MORRIS:    Correct.

THE COURT:    For $ 35

MR. MORRIS:    Well, Your Honor, it's really bizarre...

**APPENDIX B, Page 7**

THE COURT:     That's what the transcript…

MR. MORRIS:…because if you look at the docket sheet, and the judgment itself, and I think I've attached this one. Essentially what it said is a debt action…this is the notice of action which is signed by the Justice of the Peace Court, it's not the docket sheets, it's September 6th, 2005, a debt action is filed when a party owes money, refused or does not pay.

In this case, the defendant was not given an opportunity to pay the debt prior to plaintiffs filing the case. After filing defendant reviewed their records, admitted they made an error, and offered to correct the error; this was refused by plaintiffs.    Defendant has agreed to credit plaintiffs' account in the amount of $ 35, case dismissed with prejudice.

THE COURT:     Okay, Now I see that.

MR. MORRIS:     And, I think that…

THE COURT:     There's some confusion in the…

MR. MORRIS:     I agree, Your Honor, that there is a confusion, but I would argue that this is essentially what the

**APPENDIX B, Page 8**

true judgment is, and not what the docket says per se.

THE COURT:     Okay. All right.

MR. MORRIS:    But, either way the plaintiffs appealed it at that point saying they should've been given court costs, and interest. At this point, the fact that it's still pending...

THE COURT:     Okay.

MR. MORRIS:    The $ 35 has been paid; I just don't see a reason why...

THE COURT:     All right, All right. Now, it's your chance.

MS SHAHIN:     Okay. Thank you, Your Honor.

THE COURT:     Now, is it correct that in this case it was dismissed below?

MS. SHAHIN:    This is what I want to address, this is correct. On the certified copy, which I attached to my appeal, it says that the judgment was entered in the Justice of the Peace Court in favor of Nina and Mazen Shahin. And this is correct, the original decision of the judge, it states all the facts that we allegedly didn't give appropriate notice. That they offer to pay, and some other facts, which has never...

**APPENSIX B, Page 9**

THE COURT:     Well, was it ultimately dismissed by the

Justice of the Peace?

MS. SHAHIN:     It was dismissed.

THE COURT:     Okay.

MS. SHAHIN:     And all these facts, which she claims in her

decision, have never been proved in her court.

THE COURT:     Well, you sued for $ 35; they credited the

$35 in the court below, didn't they?

MS. SHAHIN:     The credited only for $35 after the Court,

after this hearing, not before.

THE COURT:     Okay.

MS. SHAHIN:     So, it means for three months...

THE COURT:     But before you came here they credited it?

MS. SHAHIN:     No. Oh, before I came here?

THE COURT:     Yes.

MS. SHAHIN:     Yes.

THE COURT:     All right.

MS. SHAHIN:     But, it was after the court, and the whole

premise of our appeal is that we have been denied the right to

**APPENDIX B, Page 10**

present our case in the Court of Peace. We have the right to present, because what the Judge claim, and what the defendant/appellee claim is not true.

THE COURT:    Well, you did present your case, he just ruled against you.

MS SHAHIN:    No, we didn't present, that's the whole point. She didn't allow us to question the witness, she didn't allow us to present any proofs. As a matter of fact, we even didn't receive the response of the defendant, so when we entered her room we didn't even know what they claimed, so we could not even address their claims, because we didn't know what the claims were, so we're denied due process...

THE COURT:    Well, okay, what's your second suit about? You've got two suits; it's about something different than this?

MS SHAHIN:    What happened when we deposited our...

THE COURT:    Answer my question, what's the second suit about?

MS. SHAHIN:    That is what I'm trying to explain.

**APPENDIX B, Page 11**

THE COURT:     All right.

MS. SHAHIN:     To explain the confusion what is this all about. We deposited our own check from one Delaware bank to another, from PNC Bank to Delaware Credit Union. PNC bank was a local branch, so it was miscoded by the Delaware Credit Union as not a local check, when in fact it was a local check. So according to their procedures a local check was supposed to have a hold only of three days, they put a hold of seven days.

THE COURT:     Okay.

MS. SHAHIN:     And in the course of those three days they bounced two transactions, and charged twice $35.

THE COURT:     They charged two separate...

MS. SHAHIN:     Two separate occasions although it was triggered by the same check, on two separate occasions, and they claim that we did not notify them when, in fact, we made every effort to notify them of the fact, they just didn't want to listen.

THE COURT:     Okay.

**APPENDIX B, Page 12**

MS, SHAHIN:     And, the Judge didn't allow us to hear the case, so all this in the motion for summary judgment, all these claims are false, all these claims, in fact, are not true.  So this is why we claim that there could be no summary judgment when there is such a wide dispute on the matters of fact, which were not heard in the Justice of Peace Court, because there was no practical hearing.

When we entered the Court, Judge listened and communicated with the defendant only without giving us opportunity even to say a word, and then she dismissed the case, so we didn't have the opportunity to present our part...

THE COURT:     Okay.

MS. SHAHIN:     ...of the evidence or claims.

THE COURT:     That may be.  Were two separate hearings on the two different cases?

MS. SHAHIN:     Yes, there were two separate, and we appealed both of them, and this is actually the second incident, although it was processed by time in the court system as the first.  The second one...

**APPENDIX B, Page 13**

THE COURT:    What are you claiming in the second case that you're not claiming in the first case?

MS. SHAHIN:    In the second case we claim plus all the court of appeal fees.

THE COURT:    The one I'm not...

MS. SHAHIN:    And all the interest on all the money.

THE COURT:    You are really claiming the same thing in the second case you're claiming in the first case, aren't you?

MS. SHAHIN:    Nor necessarily. We claim only $ 38 of the court fees in Justice of the Peace Court, plus the interest on the money.

THE COURT:    Okay.

MS. SHAHIN:    There I claim everything plus court claim fees...

THE COURT:    In this case you're claiming court costs plus interest; the other case you're claiming what, court costs, interest and what?

MS. SHAHIN:    And any other amounts which Court finds equitable and necessary.

**APPENDIX B, Page 14**

THE COURT:      Any other amount for what?

MS. SHAHIN:      Penalty for false claims, for perjury.

THE COURT:      Well, you have to prove that. It seems to me you're claiming the same thing in both cases.

Have you completed your statement to the Court in this case?

MS. SHAHIN:      Yeah, Your Honor, yeah, I want to say additionally that we practically in the Court of Peace were denied our constitutional rights of equal protection, and due process, and this is why we want to hear the case *de novo* in the Court of Common Pleas.

THE COURT:      All right. Okay. Thank you.

Anything further Mr. Morris?

MR. MORRIS:      Just briefly, Your Honor. I don't really know what the heck happened in J.P. Court, all I know is $ 35 has been paid since September 6th.

If you heard the trial today, on those issues, you would have to find on behalf of the defendant at that point, because...

**APPENDIX B, Page 15**

THE COURT:    Is my decision on this case going to be *res judicata* on the other one?  It sounds like it would be?

MR. MORRIS:    I think, it is, I think, and I apologize to the Court not bringing that file, but I do think there was something a little bit different from this one, and in fact that one just came up recently, but I think ultimately...

THE COURT:    I can't determine what it is, it seems like they're suing for the same thing.

MR. MORRIS:    It seems like it to me, Your Honor, but factually it's a little different, because there was some issue about a three day period, and whether certain checks should have been cleared.

In this one it's all about $ 35 to their account, and quite frankly that $ 35 has been paid over three months ago.

THE COURT:    Okay.  In the case that remains open is 0113, I'll hand that file back to the clerk so we're clear.  In the motion for summary judgment is for 0074.

And the question is does the plaintiffs'

**APPENDIX B, Page 16**

claim state a claim for which relieve can be granted. There must be a principal sum due, or shown to be due before you can get interest, and court costs. In other words, the plaintiffs are going to have to demonstrate from the pleadings, that there is still $ 35 due in order to recover interest, and court costs.

The $ 35 has been paid, there's nothing before the Court to indicate that there is a sum due still, at least in this case, from the Delaware Credit Union to these plaintiffs.

MS. SHAHIN:     But they paid it three…

THE COURT:     Keep quiet, I'm rendering my decision.

You don't get court costs and interest unless you have a claim from which relief can be granted. There is no claim for which relief can be granted in this case. The motion for summary judgment is granted.

- - - -

**APPENDIX B, Page 17**

**CERTIFICATE OF REPORTER**

I, Linda A. Lavender, Official Court Reporter of the Court of
Common Pleas, State of Delaware, do hereby certify that the
foregoing is an accurate transcript of the testimony adduced
and proceedings had, as monitored and electronically
recorded, in the Court of Common Pleas, in and for Kent
County, in the case therein stated, as the same remains of
record in the Court of Common Pleas, Kent County at Dover,
Delaware.

WITNESS my hand this 27th day of January
2006 A.D.

"/s/ Linda Lavender"

Certificate No. 172-PS
Expiration Date: Permanent

**APPENDIX B, Page 18**

**IN THE JUSTICE OF THE PEACE COURT OF
THE STATE OF DELAWARE, IN AND FOR KENT COUNTY
COURT NO. 16**

**COURT ADDRESS:**
**480 BANK LANE**
**DOVER DE 19904**

**TRANSCRIPT OF JUDGEMENT AND EXECUTION FOR
TRANSFER TO KENT COUNTY COURT OF COMMON
PLEAS**

**PLAINTIFF:**

NINA MAZEN SHAHIN          **CIVIL ACTION NO.**J0507004516
103 SHINNECOCK RD.          JUDGMENT:   $ 35.00
DOVER DE 19901
302-678-1805

                            **Clock in Stamp**: 2005 SEP 21  A 9:55
        v.                  COURT OF COMMON PLEAS

**DEFENDANT:**
DE FEDERAL CREDIT UNION
150 EAST WATER STREET
DOVER DE 19901
302-739-4496

    ON SEPTEMBER 6, 2005 JUDGMENT BY TRIAL WAS
ENTERED BY JUSTICE OF THE PEACE COURT NO. 16 IN
FAVOR OF NINA MAZEN SHAHIN AND AGAINST FEDERAL
CREDIT UNION FOR $ 35.00.

**Round Stamp** with          This is to certify that this is a
Inscription on circumference:   true and correct transcript of
*JUSTICE OF THE PEACE COURT*  the judgment and Constable's
 STATE OF DELAWARE           return of execution
                                   "/s/_____ "
                            Justice of the Peace /Court Official
                            Date:   SEPTEMBER 20, 2005

J.P. Civ. Form No. 24 (Rev. 6/15/00)
                    **APPENDIX C, Page 1**

JUSTICE OF PEACE CIVIL DOCKET – COURT 16
AS OF 09/20/2005

PAGE 1

CIVIL ACTION NO. J0507004516

FILED 06/28/2005                    DEBT ACTION
                                    NON-ARBITRATION
                                    NON-JURY TRIAL

*** L I T I G A N T S ***

NINA M SHAHIN

----------VS---------

DE FEDERAL CREDIT UNION
    EVENT
NO.  DATE              DOCKET TEXT

2    07/06/2005  FILING DATE:  06/28/2005  FEE:  30.00
                 RELIEF AMT:  35.00 PERSONAL PROPERTY
                 VALUE:    OTHER AMT:    15.00
                 PRE INT RATE:    PRE INT AMT:    POST
                 INT. RATE:
                 OTHER-SUBPOENA FOR LISA BREWER,
                 BRANCH MANAGER

3    07/06/2005  NOTICE(S) GENERATED:  07/06/2005

4    07/06/2005  FORMS GIVEN TO: CONSTABLE COURT 16
                 DATE:  07/07/2005

5    07/18/2005  RETURN OF SERVICE POSITIVE FOR AND
                 DATE SIGNED FOR:  DE FEDERAL CREDIT
                 UNION – 07/14/2005
                 SIGNED BY IF DIFFERENT THAN NAME
                 ABOVE:  JANE WASHINGTON

6    07/29/2005  CASE UPDATED:  07/29/2005
                 07/28/05 – PER JUDGE DARLING LETTER
                        **APPENDIX C, Page 2**

SENT TO PLAINTIFF STATING: THE COURT IS REQUIRING THAT WITHIN 15 DAYS YOU SUPPLY THE COURT WITH THE FOLLOWING INFORMATION CONCERNING CASE #'S J0507004516, AND J0506073516: THE AMOUNTS OF THE CHECKS, CHECK NUMBERS AND EXACT DATES IN WHICH YOUR ACCOUNT WAS DEBITED FOR NON-SUFFICIENT FUNDS.  FAILURE TO SUPPLY THE COURT WITH THE ABOVE INFORMATION BY 8/12/05 WILL RESULT IN THE CASES BEING DISMISSED.

7    08/15/2005    TRIAL SCHEDULED: TUESDAY 09/06/2005 01:00 PM   TO BE HEARD WITH CA # J0507004516

8    08/15/2005    NOTICE(S) GENERATED 08/15/2005

9    09/06/2005    09/06/05 A DEBT ACTION IS FILED WHEN A PARTY OWES MONEY AND REFUSED OR DOES NOT PAY.   IN THIS CASE THE DEFENDANT WAS NEVER GIVEN OPPORTUNITY TO PAY THE DEBT PRIOR TO PLAINTIFF FILING CASE.   AFTER FILING DEFENDANT REVIEWED THEIR RECORDS AND ADMITTED THEY HAD MADE AN ERROR AND OFFERED TO CORRECT THE ERROR. THIS WAS REFUSED BY PLAINTIFF. DEFENDANT HAS AGREED TO CREDIT

JUSTICE OF PEACE CIVIL DOCKET  - COURT 16
AS OF 09/20/2005

PAGE 2

CIVIL ACTION NO.   J0507004516

PLAINTIFF ACCOUNT IN THE AMOUNT OF #

**APPENDIX C, Page 3**

35.00.  CASE DISMISSED WITH PREJUDICE.

10    09/16/2005    JUDGMENT MAILED:  09/06/2005
                    APPEAL PROCEDURES INCLUDED

11    09/09/2005    CASE UPDATED:  09/09/2005
                    09/07/05 – RECV'D LETTER OF COMPLAINT
                    FROM NINA SHAHIN CONCERNING JUDGES
                    DECISION IN THIS CASE.
                    09/07/05/-SENT    LETTER    TO    PLAINTIFF
                    STATING:
                    JUDICIAL OPERATIONS MGR DOES NOT
                    REVIEW THE CASE DECISIONS OF THE JP
                    JUDGES, NOR DO I DIRECT THEM HOW ANY
                    INDIVIDUAL CASE SHOULD BE HANDLED.
                    INCLUDED IN THE LETTER OF NAMES AND
                    ADDRESSES    OF    DCM    AND    CHIEF
                    MAGISTRATE FOR FILING COMPLAINTS.
                    STATED ALSO THAT APPEAL PROCEDURES
                    WERE INCLUDED WITH THE ORDER.

12    09/20/2005    APPEAL – CASE APPEALED TO COURT OF
                    COMMON PLEAS
                    TRANSCRIPT    REQUESTED    BY:    NINA
                    SHAHIN
                    DATE TRANSCRIPT ISSUES:  09/20/05
                    FEE PAID:  $ 10.00
                    DOCKET ABOVE IS A TRUE AND CORRECT
                    COPY OF ALL ENTRIES ON THIS CASE.
                    JUDGE:

**Round Stamp** with                The same signature of the
Inscription on circumference:       Court Official as on the
*JUSTICE OF THE PEACE COURT*        first page was administered
 STATE OF DELAWARE                  on this page within the last
                                    paragraph

**APPENDIX C, Page 4**

IN THE SUPREME COURT OF THE STATE OF DELAWARE

MAZEN AND NINA SHAHIN,           §
                                 §
        Appellants Below-        §  No. 472, 2006
        Appellants,              §
                                 §  Court Below—Superior Court
        v.                       §  of the State of Delaware,
                                 §  in and for Kent County
DELAWARE FEDERAL CREDIT          §  C.A. No. 06A-01-004
UNION,                           §
                                 §
        Appellee Below-          §
        Appellee.                §

                Submitted:  November 20, 2006
                Decided:     January, 24 2007

Before **BERGER, JACOBS,** and **RIDGELY,** Justices.

### O R D E R

This 24th day of January 2007, after careful consideration on
the appellants' opening brief and the appellee's motion to affirm, the
Court finds it manifest that the judgment below should be affirmed on
the basis of the Superior Court's well-reasoned decision, dated
August 3, 2006, which affirmed the Court of Common Pleas' order
granting summary judgment to appellee. The Superior Court did not
err in affirming the Court of Common Pleas' judgment that there was
no genuine issue of material fact and that appellee was entitled to

**APPENDIX D, Page 1**

judgment as a matter of law.

NOW, THEREFORE, IT IS ORDERED that the judgment of

the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Jack B. Jacobs
Justice

**APPENDIX D, Page 2**

IN THE SUPREME COURT OF THE STATE OF DELAWARE

MAZEN AND NINA SHAHIN,           §
                                 §
    Appellants Below-            §    No. 472, 2006
    Appellants,                  §
                                 §
        v.                       §  Court Below--Superior Court of
                                 §  the State of Delaware, in and for
DELAWARE FEDERAL                 §  Kent County
CREDIT UNION,                    §  C.A. No. 06A-01-004
                                 §
    Appellee Below-              §
    Appellee.                    §

                    Submitted:   January 29, 2007
                    Decided:     February 9, 2007

Before **STEEL,** Chief Justice, **HOLLAND, BERGER, JACOBS**
and **RIDGELY,** Justices, constituting the Court *en Banc*.

## O R D E R

This 9th day of February 2007, it appears to the court that:

(1) On January 29, 2007, appellants filed a motion for rehearing

   *en Banc* of this Court's Order dated January 24, 2007. *See*

   Supr. Ct. R. 4(f).

(2) The Court has carefully considered the motion for rehearing

   *en Banc* and concludes that the motion is without merit and

   should be denied.

**APPENDIX E, page 1**

NOW, THEREFORE, IT IS ORDERED that the motion for rehearing *en Banc* is **DENIED.**

BY THE COURT:

/s/ Jack B. Jacobs
Justice

**APPENDIX E, page 2**

**IN THE COURT OF COMMON PLEASE FOR THE STATE OF**

**DELAWARE IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| **MAZEN AND NINA SHAHIN,** | * | **CA NO.: 05-09-0074 AP** |
| **APPELLANTS** | * | |
| | * | |
| | * | |
| **V.** | * | |
| | * | |
| **DE FEDERAL CREDIT UNION,** | * | |
| **APPELLEE** | * | |
| | * | |

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that Defendant Delaware Federal

Credit Union   attached Motion for Summary Judgment will be

presented to the Court at a date which is convenient for the Court.


LIGUORI, MORRIS & YIENGST

Upside down clock in stamp:
  2005  NOV:  8 P 3:42   BIG SQUIGGLE FOR SIGNATURE
COURT OF COMMON PLEAS    Gregory A. Morris, Esquire
                                   46 The Green
                                   Dover, DE 19901
                                   (302)678-9900
                                 Attorney for Defendant


**APPENDIX F, Page 1**

**IN THE COURT OF COMMON PLEASE FOR THE STATE OF**

**DELAWARE IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| **MAZEN AND NINA SHAHIN,** | * | **CA NO.: 05-09-0074 AP** |
| **APPELLANTS** | * | |
| | * | |
| | * | |
| **V.** | * | |
| | * | |
| | * | |
| **DE FEDERAL CREDIT UNION,** | * | |
| **APPELLEE** | * | |
| | * | |
| | * | |

## MOTION FOR SUMMARY JUDGMENT

1. The above referenced case is an appeal from the Justice of the Peace Court 16 which was filed as a debt action.  Plaintiff's complaint states that they are entitled to only Court costs and interest as a result of the deposit which was made to Plaintiff's account on June 20, 2004.  the deposit did not clear in the appropriate time manner because Delaware Federal Credit Union had placed an extended hold on the deposit.  Defendant was not made aware of this problem until the Plaintiff filed an action in the Justice of the Peace Court # 7.

2. The Defendant immediately agreed to correct the error which  was

**APPENDIX F, Page 2**

refused by Plaintiff.    As a matter of fact, Defendant credited Plaintiff's account in the amount of $ 35.00 on September 6, 2005.

3.  The Court below was faced with the same fact pattern and when it learned that the Defendant had agreed to credit Plaintiff's account in the amount of $ 35.00, the Court dismissed the complaint. (See J.P. 16 Decision attached as Exhibit "A"). The Plaintiff now appeals because it is now  seeking Court costs and interest.

4.  Plaintiff's Complaint lacks legal merit since their account has already been reimbursed $ 35.00 as of September 6, 2005.   As such, there is no basis to be awarded Court costs and interest since they are merely proceeding with this litigation for a malicious purpose.

WHEREFORE, Defendant would respectfully request that this Court grant Summary Judgment in this matter since Plaintiff is not entitled to any additional relief.

LIGOURI, MORRIS & YIENGST
The same squiggle
Gregory A. Morris, Esquire

DATE:  11/18/2005

46 The Green
Dover, DE 19901
(302)678-9900
Attorney for Defendant

**APPENDIX F, Page 3**

**IN THE COURT OF COMMON PLEASE FOR THE STATE OF**

**DELAWARE IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| **MAZEN AND NINA SHAHIN,** | * | **CA NO.: 05-09-0074AP** |
| **APPELLANTS** | * | |
| | * | |
| | * | |
| **V.** | * | |
| | * | |
| | * | |
| **DE FEDERAL CREDIT UNION,** | * | |
| **APPELLE** | * | |
| | * | |

**AFFIDAVIT**

STATE OF DELAWARE    :
                                      : SS
COUNTY OF KENT :

BE IT REMEMBERED that on this 16 day of NOV, A.D. 2005, personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, Rene Thompson on behalf of Delaware Federal Credit Union, the Defendant in the foregoing, known to me personally to be such, who being duly sworn according to law, did depose and say that the facts herein contained in the Motion for Summary Judgment are true and

**APPENDIX F, Page 4**

correct to the best of her knowledge.

"/s/_____"
Renee Thompson

**SWORN TO AND SUBSCRIBED** before me the day and year

aforesaid.

The same squiggle as the attorney's
**NOTARY PUBLIC**

DATE  (BLANK)

**APPENDIX F, Page 5**

**IN THE COURT OF COMMON PLEASE FOR THE STATE OF**

**DELAWARE IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| **MAZEN AND NINA SHAHIN,** | * | **CA NO.: 05-09-0074 AP** |
| **APPELLANTS** | * | |
| | * | |
| | * | |
| **V.** | * | |
| | * | |
| **DE FEDERAL CREDIT UNION,** | * | |
| **APPELLEE** | * | |
| | * | |

## CERTIFICATE OF SERVICE

I the undersigned do hereby certify that I have caused copies of

the foregoing **Motion for Summary Judgment** to be served

upon the following:

Mazen and Nina Shahin

103 Shinnecock Rd.

Dover, DE 19904

**LIGUORI, MORRIS & YIENGST**

BY: The same squiggle as everywhere else
**GREGORY A. MORRIS, ESQUIRE**
46 The Green
Dover, Delaware 19901
(302)678-9900
Dated: 11/18/2005                    Attorney for Defendant

**APPENDIX F, Page 6**

```
SHJE Journal Voucher          09/06/05 03:12PM 22316 21  211 RLT BR:02

     39382-75  SHAHIN/MAZEN M             EFF DT:09/06/05        G
AMT:      35.00 TO GOLDEN ADVANTAGE
MEMB FEES:    .00 BAL:    7,438.68
DESCRIPTION: FEE REV/JP CRT 6/23

            NF  FEE REV/JP CRT 6/23      EFF DT:09/06/05        0
AMT:     -35.00 FROM F & T TYPE SUM
```

SWITCH TO E-STATEMENTS AND YOU COULD WIN A DELL COMPUTER AND PRINTER!* VISIT
WWW.DELAWAREFCU.ORG OR ASK A DEFCU REPRESENTATIVE FOR MORE INFORMATION.
*CONDITIONS AND RESTRICTIONS APPLY.

```
      MAZEN M SHAHIN
      103 SHINNECOCK RD
      DOVER          DE 19904
```

```
            DELAWARE FEDERAL CREDIT UNION          DATE:[09/06/05
ID:[  ] TRAN CODE:[    ] PARAMETERS:[
[
```



**RENÉE L. THOMPSON, CUCE, NCCO**
Compliance Officer

150 E. Water Street
Dover, DE 19901

Phone   (302) 698-1038
Fax     (302) 698-1638
E-mail  rthompson@delawarefcu.org

www.delawarefcu.org

*The following fee has been placed back into your account per Justice of Peace Court decision 9/6/05.*

*Renee*

**APPENDIX G**

# WAIVER

## Supreme Court of the United States

### No. 06-1334

Nina Shahin, et vir.                    v.          Delaware Federal Credit Union
(Petitioners)                                              (Respondent)

I DO NOT INTEND TO FILE A RESPONSE to the petition for a writ of certiorari unless one is requested by the Court.

Please check one of the following boxes:

☒  Please enter my appearance as Counsel of Record for all respondents.

☐  There are multiple respondents, and I do not represent all respondents. Please enter my appearance as Counsel of Record for the following respondent(s):

_____

_____

I certify that I am a member of the Bar of the Supreme Court of the United States (Please explain name change since bar admission):

Signature _____

Date:     4-13-07

(Type or print) Name     James E. Liguori

☒ Mr.          ☐ Ms.          ☐ Mrs.          ☐ Miss

Firm     Liguori, Morris & Yiengst

Address     46 The Green

City & State     Dover, DE                                        Zip 19901

Phone     (302) 678-9900

SEND A COPY OF THIS FORM TO PETITIONER'S COUNSEL OR TO PETITIONERS IF PRO SE. PLEASE INDICATE BELOW THE NAME(S) OF THE RECIPIENT(S) OF A COPY OF THIS FORM. NO ADDITIONAL CERTIFICATE OF SERVICE IS REQUIRED.

Cc:     Nina Shahin
        Mazen Shahin
        103 Shinnecock Rd.
        Dover, DE 19904

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

May 21, 2007

Ms. Nina Shahin
103 Shinnecock Road
Dover, DE  19904

> Re:  Nina Shahin, et vir
>      v. Delaware Federal Credit Union
>      No. 06-1334

Dear Ms. Shahin:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

**William K. Suter**, Clerk

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

**Mazen & Nina Shahin**

      **Plaintiffs Below,**
      **Appellants,**

      **v.**

**Delaware Federal Credit Union**

      **Defendant Below,**
      **Appellee,**

**No. 93, 2007**

---

## ON APPEAL FROM:

**Superior Court Decision entered on January 22, 2007 by Honorable Robert B. Young in which he granted the Defendant's Motion for Judgment on Pleadings and dismissed with prejudice the Plaintiffs-Appellants' complaint**

---

## APPELLANTS' OPENING BRIEF

---

      **Appellants represent themselves (*pro se* representation)**

      **Attorney for the Appellee:**

      **Monté T. Squire., Esq.,**
      **The Brandywine Bldg.,**
      **100 West St., 17th Floor**
      **Wilmington, DE 19801**
      **Tel. # (302)571-6713**

## 1. TABLE OF CONTENTS

                                                                    Page

1. Table of Contents   ………………………………………………    2

2.  Table of Citations   ………………………………………………..    3

3. The Nature of the Proceedings …………………………………    4 - 5

4. A Summary of Argument   …………………………………………    6 - 12

5. A Statement of Facts  …………………………………………………    13 - 15

6. An Argument ........…………………………………………..    16 - 18

7. Conclusion   ………………………………………………………..    19

8. Certificate of Service  ………………………………………………    20

**ATTACHMENTS:**

1) Copy of the Superior Court Decision of 01/22/2007

2) Copy of the Defendant's Attorney's Motion for the Costs and Fees

3) Copy of the Superior Court Letter dated 02/26/2007 and signed by Mei-Ling Cosgrove

4) Copy of the Superior Court Decision Awarding Attorney's Costs and Fees of March 16, 2007

5) Copy of the Plaintiffs-Appellants' Motion to Vacate the Decision of the Superior Court Awarding Attorney's Costs and Fees filed on March 30, 2007

## 2. TABLE OF CITATIONS

**Pages**

**CASES:**

**U.S. Supreme Court:**

*Mullane v. Hanover Bank and Trust Co.,* 339 U.S. (1950) ............    9
*Richards v. Jefferson County,* 116 S. Ct. (1996) ......................    9

**Delaware Courts:**

*Arnold v. Society for Sav. Bancorp. Inc.,* Del Supr., 650 A.2d (1994) ...    17
*Chavin v. Cope, Del. Supr.,* 243 A.2d (1968) .............................    17
*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund,*
*II. L.P.,* Del. Supr., 624 A.2d (1993)    ..........................................    17
*DuPont v. DuPont,* Del. Supr., 216 A.2d (1966) .......................    16
*Fagnani v. Integrity Fin. Corp.,* Del. Super., 167 A.2d (1960) ..........    16
*Fiduciary Trust Co., v. Fiduciary Trust Co.,* Del. Supr., 445 A.2d (1982)    16
*Levine v. Smith,* Del. Supr., 591 A.2d (1991) .............................    17
*Nardo v. Nardo,* Del. Supr., 209 A.2d (1965) .............................    16
*Pitts v. White,* Del. Supr., 109 A.2d (1954) .................................    17
*Rohner v. Niemann,* Del. Supr., 380 A.2d (1977) .......................    17
*RSS Acquisition, Inc. v. Dart Group Corp.,* 1999 WL 1442009
at *3 (Del. Super.) ...............................................................    6
*Wife (J.F.V.) v. Husband (O.W.V., Jr.),* Del. Supr., 402 A.2d (1979 ...    16
*Wright v. State,* 405 A.2d (Del. 1979) .....................................    17

**STATUTES:**

14th Amendment to the Constitution of the US ..........................    4, 12, 14
12 CFR 229.2(z)(5)(nn)   .........................................................    11
12 CFR 229.12(b)    ...............................................................    4
12 CFR 229.21(a)   .................................................................    7, 12, 14
6 Del.C. § 4-103(a) ................................................................    10, 11
6 Del.C. § 3-103(7) ................................................................    11

**OTHER AUTHORITATIVE SOURCES:**

West Legal Desk Reference, William P. Stasky el al., West Publishing
Co., St. Paul MN 1991 ...........................................................    6
Super. Ct. Civ. R. 54(i) ●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●    10
Supreme Ct. Civ. R. 25(a)    ●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●    7, 12, 14
Delaware Judges' Code of Professional Conduct
        Canon 3 ...................................................................    17

### 3. THE NATURE OF THE PROCEEDINGS

Appellant, Nina Shahin, filed a civil, personal injury and perjury lawsuit on her and her husband's behalf on October 2, 2006 against the Delaware Federal Credit Union (Del-One). The basis for personal injury stemmed from different instances of poor services and breach of fiduciary duties that fall under the category of lack of "due care" as well as the incident of aggravated harassment related to misclassification of local check by the Del-One employee and barring the timely access to the Plaintiffs' account funds in violation of § 229.12(b) of the Federal Regulation CC.   The Plaintiffs filed a lawsuit at the Justice of the Peace Court after failing to get any response from the employees and the branch manager on the transaction that caused the problem and the underlying check.  The JP Court found violation on the part of the Del-One and awarded $ 35.00 of erroneously deducted Non-Sufficient Fee (NSF) charge to the Plaintiffs but denied them the statutory damages they were entitled to under § 229.21(a) on the basis of perjury and in violation of the Plaintiffs' constitutional rights of "due process" and "equal protection" guaranteed by the 14th Amendment to the US Constitution.

The Plaintiffs received a Notice of Motion for Judgment on the Pleadings sometime at the end of December of 2006 that was dated December 15, 2006. On January 19, 2007 the Plaintiffs filed the Plaintiffs' Reply to the Motion for Judgment on Pleadings. On January 22, 2007 the Judge Robert, B. Young entered his decision to dismiss the Plaintiffs' complaint with prejudice (copy of that decision is attached to this Brief as an Attachment 1)).

On February 20, 2007 the Plaintiffs filed their Appeal to this Court. The Plaintiffs received a Motion for Attorney's Fees and Costs dated February 23, 2007 (copy of that

Motion is attached to this Brief as an Attachment 2)). Plaintiffs also received a letter from the Superior Court dated 02/26/2007 and signed by Mei-Ling Cosgrove about improper filing of that Motion and a request for refilling (copy of that letter is attached to this Brief as an Attachment 3)). After that Plaintiffs received an order signed by Judge Robert B. Young on March 16, 2007 granting that Motion and awarding attorney's fees in the amount of $ 2,500 (copy of that order is attached to this Brief as an Attachment 4)). The Plaintiffs filed their Motion to vacate that decision on March 30, 2007 (copy of that Motion is attached to this Brief as an Attachment 5)).

## 4. SUMMARY OF ARGUMENT

1. **Judge of the Superior Court, Honorable Robert B. Young, improperly applied the doctrine of *Res Judicata* to the situation in which that doctrine is inapplicable for at least three different reasons.**

    i.   The judge started his argument with the following quotation, "To begin, *res judicata* ensures that "a final judgment upon the merits of a case are rendered by a court of competent jurisdiction may, in the **absence of fraud or collusion,** (emphasis added by Plaintiffs-Appellants) be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies."[1]

    The Plaintiffs hereby raise the issue of <u>**COLLUSION**</u> between judges of different courts and the attorneys in this and the related case that bars application of the doctrine of *Res Judicata* to this and all related cases. **"Collusion"** is defined as "**An agreement** between two or more persons to defraud someone of his or her rights by the forms of law"[2].

    •   In the concluding section of his argument Honorable Judge writes, "In the present case, only one of three actions the Plaintiffs originally brought in the Justice of the Peace Court, is final; that is C.A., No. J0504026216." First of all, only two actions originated in the JP Court. Secondly, that final decision is dated January 24, 2007 and was entered by the Supreme Court of Delaware but the decision of the Honorable Judge Young is dated January 22, 2007. It appears that there was a communication between the judges of both courts prior to the Supreme Court Decision entered on

---

[1] *RSS Acquisition, Inc. v. Dart Group Corp.*, 1999 WL 1442009 at *3 (Del. Super.).
[2] West Legal Desk Reference, William P. Stasky el al., West Publishing Co., St. Paul MN 1991, p. 56

January 24, 2007, if the Honorable Judge Young knew of the decision two days in advance. The question is whether that communication was in the form of an "agreement" to defraud the Plaintiffs of their right to statutory damages under § 229.21(a) of the Regulation CC and to conceal violation of their constitutional rights by the Justice of Peace Court and the Court of Common Pleas of Kent County. On the surface it appears that the actions of both courts were coordinated and both decisions are rendered in violation of the rules of law and civil procedure to specifically achieve that objective of deprivation of the Plaintiffs-Appellants of their rights under the law. Decision of the Honorable Judge Robert B. Young in C.A. No. J0504026216 actually falsified the decision of the JP Court and the underlying facts established in that court and made conclusion completely opposite to the conclusion of the JP Court that had found violation of the Regulation CC, the fact that even the Defendant does not deny. The Supreme Court of the State of Delaware affirmed the Motion to Affirm that had been filed in violation of all three provisions of the Rule 25(a) of the Rules of Civil Procedure of the Supreme Court of Delaware under which it had been filed. Since the attorney bragged about his confidence in getting that Motion approved more than three months before the decision was actually rendered in the pretrial conference in a related case, it appears, that the attorney was part of the fraudulent collusion. As a matter of fact, the decisions of both courts were rushed to a conclusion of only two days apart when the Plaintiffs-Appellants mentioned in their Reply Pleadings of January 19, 2007, the fact of violation of that procedural rule and the proof of perjury obtained during hearing on a related case

held on January 17, 2007 and this is another proof that the actions of the attorneys and the judges were coordinated in an apparent collusion.

- Current attorney for the Appellee in this case filed a Motion for the Attorney Fees and Costs in violation of the Superior Court Rule 54(i); yet, the Honorable Judge Robert B. Young approved that Motion even it had been re-filed without a copy to the Plaintiffs-Appellants or not re-filed at all . It appears that those actions of both the judge and the attorney are falling into a classic definition of the term "collusion" with an additional flair of judicial harassment to intimidate the Plaintiffs-Appellants with financial hardship illegally imposed.

**The Plaintiffs-Appellants filed a Petition for Writ of Certiorari to the Supreme Court of the United States and raised the issue of "collusion" in a different form as a "cover up" provided by the Supreme Court of Delaware of the egregious violations of the Plaintiffs' constitutional rights by the JP Court Justice and the Judge of the Court of Common Pleas of the Kent County and the application of different standards of law, regulations and civil procedure (or a complete lack thereof) to the cases of the Plaintiffs-Appellants who represent themselves in *pro se* representation. A copy of the Petition is presented at the Appendix as the only document in that section.**

    ii.    The second reason why *Res Judicata* does not apply is that neither any judge in any court in the State of Delaware (from JP to the Supreme) nor the attorneys have bothered to spell out verbally or in writing that the Plaintiffs are entitled to statutory damages as a matter of law under § 229.21(a) of Regulation CC that the Defendant so fragrantly violated. The Plaintiff-

Appellant specifically raised a question of what they were entitled to under the law in the Court of Common Pleas during hearing on Summary Judgment but the judge did not provide any response to that question. The attorney at that hearing specifically mentioned that that the Appellants' request for court fees and interest (that are defined as statutory damages under § 229.21(a) of Regulation CC) was "moot" at that point. Taking into consideration that the Plaintiffs-Appellants' constitutional rights of "due process' and "equal protection" were so grossly violated, their interests did not get any protection at all. "An elementary and fundamental requirement of due process in any proceeding which is to be **accorded finality** (emphasis added by Plaintiffs-Appellants) is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (*Mullane v. Hanover Bank and Trust Co.,* 339 U.S. 306, 314 (1950). See also *Richards v. Jefferson County,* 116 S. Ct. 1761 (1996). *Res Judicata* may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected).

iii.    And the last but not least. As the Judge himself noted, the fifth and the final component of the *Res Judicata* doctrine is the finality of the decision. Since the collusion between the judges and the attorneys was so fragrant and the violations of laws and procedural rules were so egregious as to reach the level of constitutional rights violations, the Plaintiffs-Appellants have filed a

Petition for Writ of Certiorari and, therefore, there is no finality of a decree in the underlying case.

2. **The Judge, Honorable Robert B. Young, displayed so profound lack of impartiality towards the Plaintiffs which is a mandatory requirement of his profession that his final conclusion about the merits of their case has no basis in the facts or the relationship of these facts to the harm claimed by the Plaintiffs-Appellants. The Honorable Judge falsifies facts and then applies rules of law to these falsified facts producing invalid and legally unsustainable decisions.**

- All instances of "poor services" were so egregious violations of the standards of "due care" and "good faith" established by law (Federal and the State) that it caused the Plaintiffs numerous hours and days spent in lines to reach the manager of the branch, arguing with her about violations, trying to prove that those violations had occurred, trying to get restoration of the funds erroneously taken from their account with the resulting psychological aggravation and financial losses. Twice the CEO of the Del-One harassed the Plaintiffs-Appellants on the phone and as a result of one of those harassments the Plaintiff was rushed with a high blood pressure to the emergency room of the Kent General Hospital. Regulation CC imposes statutory damages that are specifically defined or "actual". Constitution of the State of Delaware in Title 6, § 4-103(a) indicates that the damages in such instances cannot be limited. But the Judge does not see the facts that he does not want to see, he falsified the facts that he did not like and falsified the entire record of the Justice of the Peace court because it was not to

his liking. To justify all these falsifications he made a reference not to the decision of the JP Court but to a dubious claim repeatedly made by the Defendant's attorney.

**The Plaintiffs-Appellants are raising the issue of WHY this particular case was assigned to the judge who displayed such an egregious lack of impartiality in a previous case?!!!**

In this case that is now before the Supreme Court, the Honorable Judge Robert B. Young not only denied the Plaintiffs' right to present their claims to the impartial jury without any proper legal grounds but also violated the Rules of Civil Procedure of the Superior Court by awarding the attorney the fees and costs that are barred from awarding in the Superior Court by Rule 54(i). The Plaintiffs-Appellants express their doubts about impartiality of the Supreme Court which violated their own rules of Civil Procedure by affirming the Motion that had been filed in violation of all stipulations of the Rule 25(a) of the Supreme Court Rules of Civil Procedures.

**The Plaintiffs-Appellants hereby state that there is considerable body of evidence to prove that the judges in all courts of the State of Delaware are corrupt and the Supreme Court of the State of Delaware provided cover up for collusions between judges and attorneys in cases in which people of the State represent themselves in *pro se* representation.**

**It is obvious that people of the State are not able to bring successful lawsuits of justifiable grievances based on law and facts because of illegal insults, harassments, intimidation and deprivation of their constitutional**

rights of "due process" and "equal protection" guaranteed by the 14th Amendment of the United States Constitution.    There are no meaningful mechanisms of enforcing professional standards for judges and attorneys in the State of Delaware because the Court of the Judiciary and the Disciplinary Board operate under the auspices of the Supreme Court of Delaware which is completely insensitive to the violations of professional conduct by judges and attorneys.

## 5.  STATEMENT OF FACTS

1.  On October 20, 2006 the plaintiff, Nina Shahin, filed a lawsuit against the Del-
    One, Delaware Federal Credit Union (DEFCU) at the Superior Court of Delaware
    on her and her husband's behalf citing in the complaint inter alia she accused the
    following violations that all fall under the category of lack of "due care" standard
    – "poor services, violated fiduciary duties, verbally insulted and harassed the
    plaintiff and the plaintiff's husband" and as a direct and proximate result of those
    actions the Plaintiffs sustained "financial, physical, and emotional damages" and
    there is ample evidence to prove such damages but the Plaintiffs-Appellants were
    denied such an opportunity. There is a statutory requirement under Regulation
    CC, § 229.21(a) for an award of such damages as well as the Delaware
    Constitution requirement that removes any limitations for such claims (6 *Del.C.*
    *§ 4-103(a))*.

2.  All instances mentioned in the Plaintiffs-Appellants' complaint except two were
    not tried in any prior courts and are aggravated violations of the standard of "due
    care" principle promulgated by the Delaware Constitution in its Title 6, Subtitle I,
    Article 3, § 3-103(7) and the standard of "good faith" promulgated by the
    §229.2(z)(5)(nn) of the Federal Regulations CC that adopted by this Regulation
    the Expedited Funds Availability Act (EFA) enacted on August 10, 1987. The
    case that had been tried at JP Court in spring of 2005 is mentioned only as an
    instance in its post-decision results that made the employees of the DEFCU
    completely unreceptive to any discussions, notices of their mistakes, requests for

help or simple honest behavior of acceptable standards of "due care" and "good faith". The second case that had been dismissed "with prejudice" without any proper reasons for doing so and in violations of the Plaintiffs-Appellants' constitutional rights is appealed to the Supreme Court of the United States.

3.    In all courts the Plaintiffs-Appellants were denied their constitutional rights of "due process" and "equal protection" guaranteed By the 14th Amendment of the US Constitution and were subjected to direct insults in the Justice of the Peace Court where the judge denied their request to question a witness they had subpoenaed to the court or to confront any of the false claims made by the Defendant; (in the court of Common Pleas by the judge Merrill C. Trader, who dismissed or ridiculed every statement made by the Plaintiff; in the Superior Court where the judge falsified the record and the facts established by the JP Court, ignored the issue of the constitutional rights violations and denied the Plaintiffs the statutory damages under Regulations CC, § 229.21(a). No wonder that the same judge tried to dispose of the current lawsuit by dismissing it "with prejudice" on completely bogus and unsubstantiated legal basis. The same judge was engaged in judicial harassment of the Plaintiffs by awarding the attorney's costs and fees in violation of the local rules of civil procedure. And, finally, the Supreme Court of the State of Delaware approved the Motion to Affirm that had been filed in violation of Rule 25(a) of its own rules of civil procedure ignoring the issue of the constitutional rights violations, providing cover up for the violations of the professional standards by the judges and the attorneys in both cases. The third case that is presently on appeal at the Superior court had during

hearing on January 17, 2007 at the Court of Common Pleas, *ex parte* communications of the Defendant's witness and the attorney before and after the court hearing, violation of the Rule on Witnesses and as a result a falsified transcript. A stupendously gross, off the wall amount mentioned by the Del-One CEO in his sworn testimony had been removed from his testimony in the transcript and considerably reduced amount planted in the testimonies of the witness who had been present all the time, the Plaintiff, and the closing speech of the attorney. The attorney called those modifications "cosmetic" but the Plaintiffs-Appellants disagree.

## 6. ARGUMENT

1. **Judge of the Superior Court, Honorable Robert B. Young, is engaged in the continuous judicial harassment of the Plaintiffs-Appellants in violation of their constitutional rights for a fair trial, displaying complete lack of judicial impartiality, honesty, and professional standards of examining only evidence presented to the court without any undue influence of "foray into judicial system" of other lawsuits in one of which the Judge falsified the record and the basic facts established by the lower court. There is evidence that there was collusion between the judges of the Supreme Court and the Honorable Robert B. Young to deprive the Plaintiffs-Appellants of their right to statutory damages under the Regulation CC by coordinating their decisions against the Plaintiffs-Appellants. There is also evidence that the Judge collided with the Defendant's attorney to harass and intimidate the Plaintiffs by awarding the attorney's fees and costs in violation of the local rules of civil procedure.**

### 1.- 2.A.    <u>Issue of Law</u>

The sole issue on appeal in this case is the issue of law since facts of the case have never been presented to the impartial jury and the attorney for the opposing party made a lot of false and dishonest claims. Accordingly, the standard and scope of review is the broad *DE NOVO* review accorded legal issues (*Fagnani v. Integrity Fin. Corp.,* Del. Super., 167 A.2d 67 (1960); *Fiduciary Trust Co., v. Fiduciary Trust Co.,* Del. Supr., 445 A.2d 927, 936 (1982); *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* Del. Supr., 402 A.2d 1202, 1204 (1979; *DuPont v. DuPont,* Del. Supr., 216 A.2d 674, 680 (1966); *Nardo v. Nardo,* Del. Supr., 209 A.2d 905, 917 (1965).

"The standard and scope of review is whether the court below erred in formulating or applying legal percepts." (See *Arnold v. Society for Sav. Bancorp. Inc.,* Del Supr., 650 A.2d 1270, 1276 (1994); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II. L.P.,* Del. Supr., 624 A.2d 1199, 1204 (1993). See also *Rohner v. Niemann,* Del. Supr., 380 A.2d 549, 552 (1977).

The Plaintiffs-Appellants presented sufficient evidence that the issue of law in this case involves the wrong application of the doctrine of *Res Judicata.*

### 1. - 2.B.      Issue of Discretion

"The standard and scope of review is whether the court below exercised its discretion in an arbitrary or capricious manner." See *Levine v. Smith,* Del. Supr., 591 A.2d 194, 203 (1991); *Chavin v. Cope, Del. Supr.,* 243 A.2d 694, 695 (1968).

"The essence of judicial discretion is the exercise of judgment direct4ed by conscience and reason, as opposed to capricious or arbitrary action; and where a court has not exceeded the bounds of reason in view of the circumstances, and has not so ignored recognized rules of law or practice, so as to produce injustice, its legal discretion has not been abused; for the question is not whether the reviewing court agrees with the court below, but rather whether it believes that the judicial mind in view of the relevant rules of law and upon due consideration of the facts of the case could reasonably have reached the conclusion of which complaint is made. (*Pitts v. White,* Del. Supr., 109 A.2d 786, 788 (1954). According to canon 3 of the Delaware Judges' Code of Professional Conduct judge should perform the duties of the office impartially and diligently. This canon was further clarified in *Wright v. State,* 405 A.2d 685 (Del. 1979), where judge is barred from

displaying undue impatience, irritation or sarcasm, especially when a party is acting as his own counsel.

The Honorable Judge Robert B. Young in this case displayed outrageous lack of impartiality, falsification of the record of lower court and the facts established by that court, the wrong application of law and civil procedure to harass and intimidate the Plaintiffs-Appellants which are clear manifestation of abuse of judicial discretion.

## 7. CONCLUSION

In view of all the above discussions and analysis the appellants respectfully prey to the Supreme Court of Delaware for the following relief:

To vacate the decision of the Superior court dismissing the Plaintiffs-Appellants complaint with prejudice and remanding it back to the Superior Court for hearing with a jury under a different presiding judge.


Respectfully submitted,

Date:   April 9, 2007                    Appellants:

                                                       Mazen Shahin

                                                       Nina Shahin

## CERTIFICATE OF SERVICE

I, NINA SHAHIN, CPA

Hereby certify that two copies of the APPELLANTS' OPENING
BRIEF WITH APPENDIX were mailed by a certified mail with a
return receipt on this day of April 9, 2007 to the Defendant's attorney at
the following address:

Monté T. Squire., Esq. ,
The Brandywine Bldg.,
100 West St., 17th Floor
Wilmington, DE 19801

Date: _April 9, 2007_                _(signature)_

NINA SHAHIN, CPA

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

NINA SHAHIN,                                :
                                            :
                    Plaintiff,              :       C.A. No: 06C-10-027 (RBY)
                                            :
        v.                                  :
                                            :
DEL-ONE Delaware Federal Credit             :
Union, et al.,                              :
                                            :
                    Defendants.             :

## O R D E R

On October 20, 2006, Nina Shahin, (Plaintiff) filed a *pro se* complaint against the Defendant, DEL-ONE Delaware Federal Credit Union. The Defendant, after answering the complaint, filed a Motion for Judgment on the Pleadings or a Motion to Dismiss.[1] For the following reasons, the motion should be **GRANTED**.

## FACTS

In her Complaint, the Plaintiff avers that between 2003 and 2006, the Defendant "provided poor service, violated fiduciary duties owed to [her] as a financial institution entrusted with safekeeping and management of public money, verbally insulted and harassed [her] and [her] husband and as a direct and proximate result of those actions [she] and [her] husband sustained financial, physical and emotional damages." The Plaintiff lists six incidents that inflicted the above damages. First, in October 2003, a bi-weekly payment on her car loan was deducted from her account

---

[1] The Defendant's answer, which claimed an affirmative defense of the Plaintiff's failure to state a claim upon which relief can be granted, adequately preserved its ability to make a separate motion raising a defense under Superior Court Civil Rule 12(b)(6).

but was added to the balance of the loan rather than being subtracted and it took a month for the Defendant to correct the mistake. Second, in May 2004, the Plaintiff applied for a home equity loan. The Defendants initially stated it was due to a poor credit, but then stated it was due to the form of the ownership of the property. The Plaintiff stated the whole conversation over this was "nothing short of harassment in which the CEO tried to force [her] to accept the poor level of services provided by the Defendant." Third, in December 2004, the Plaintiff deposited a check of $5,000 from a credit card company into her daughter's account. According to Plaintiff's allegation, a few days later, the bank called and informed the Plaintiff there was not enough money to cover the check. The Plaintiff states she was forced to go to the bank and have an employee listen to a recording that states there was enough money to cover the check. The Plaintiff asserts the absence of any apology from the manager over this. Fourth, on March 22, the Plaintiff realized there was not enough money in her account to cover her pending payments. The next day, the Plaintiff rushed to the bank to deposit the difference, but was subjected to insufficient funds charges. Fifth, the Plaintiff states that on June 20, 2005, her husband made a deposit. The deposit was classified as non-local and the funds were not available for seven days, triggering a shortage of funds and additional charges for insufficient funds. The Plaintiff stated in her complaint that this was the subject of one of her previous lawsuits that is now before the Delaware Supreme Court. Finally, the Plaintiff cites "other incidents" in 2006 that "demonstrated the unwillingness of the branch manager . . . to provide assistance to the [P]laintiff and the [P]laintiff's husband." In addition, the Plaintiff cites the false statements of fact made by the Defendant, its attorney and its employees and a harassing phone call between the Plaintiff's husband and the Defendant's CEO as additional ways in which she has been aggrieved.

2

According to the Complaint, the Plaintiff seeks: $50,000 for the perjury committed by the Defendant in the other matters she raised in the Justice of the Peace Court, the Court of Common Pleas and the Superior Court; $35,000 for the damages to her health, well being, and the risk of life to her husband and the insult to herself by the Defendant's Chief Executive Officer; $15,000 for continuous poor customer services by the branch manager that amounted to dereliction of duties; and $5,000 in compensation for pain, suffering and emotional distress inflicted on the plaintiff and her husband because of poor services, financial losses and court battles.

## DISCUSSION

As the Plaintiff admits, this is not her first foray into the judicial system based upon allegations concerning the service she has received from the Defendant. The Defendant argues that the Plaintiff's claims in this Complaint are barred by the doctrine of *res judicata* because of her previous lawsuits. In addition, the Defendant seeks the dismissal of these claims pursuant to Superior Court Civil Rule 12(b)(6) due to the Plaintiff's failure to state a claim upon which relief can be granted.

To begin, *res judicata* ensures that "a final judgment upon the merits of a case are rendered by a court of competent jurisdiction may, in the absence of fraud or collusion, be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies."[2] *Res judicata* bars claims that were raised as well as those that might have been raised.[3] The latter types of claims, i.e., claims that might have been raised, are precluded under the rule against claim splitting.[4] This rule "is based on the belief that it is fairer to require a

---

[2] *Epstein v. Chatham Park, Inc.*, 153 A.2d 180, 184 (Del. Super. 1959).

[3] *See RSS Acquisition, Inc. v. Dart Group Corp.*, 1999 WL 1442009, at *3 (Del. Super.).

[4] *See Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980).

plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times."[5] If the rule were otherwise, defendants would be subject to continual harassment from a multiplicity of suits arising from claims based on the same set of facts set forth in the initial litigation.[6] Additionally, "piecemeal litigation of a single cause of action is contrary to the orderly administration of justice."[7]

To determine if the rule against claim splitting has been violated, a court must look to the facts of each case and decide if the claim initially asserted, "transactionally defined, is identical to the claim [presently before it], even though the substantive theory of recovery asserted by [the plaintiff] in the two courts is different."[8] If the court so finds, then the plaintiff, to prevent dismissal, must "show that there was some impediment to the presentation of his entire claim for relief in the prior forum."[9] If the court concludes that the plaintiff has not met this burden, then the court should assess whether *res judicata* may apply.[10] For *res judicata* to be applied, five requisites must be met: (1) the court making the prior adjudication must have had jurisdiction over the subject matter of the suit and of the parties in it; (2) the parties to the prior action were the same parties, or their privies, in the pending case; (3) the

---

[5] *Id.*

[6] *See Webster v. State Farm Mutual Automobile Ins. Co.*, 348 A.2d 329, 331 (Del. Super. 1975).

[7] *Id.*

[8] *Maldonado*, 417 A.2d at 382.

[9] *Id.* 383-384.

[10] *Id.* 383.

4

prior cause of action was the same as that in the present case, or the issues necessarily decided in the prior action were the same as those raised in the pending case; (4) the issues in the prior action were decided adversely to the contentions of the plaintiff in the pending case; and (5) the prior decree is final.[11]

In the present case, only one of three actions the Plaintiff originally brought in the Justice of the Peace Court is final; that is, C.A. No. J0504026216, which was commenced on April 18, 2005. This matter meets all five elements of *res judicata*. Therefore, unless the Plaintiff can demonstrate an impediment to presenting her claim in that forum, *res judicata* precludes any further claims arising out of any interaction with the Defendant prior to April 18, 2005. Thus, no claims arising from the allegations listed in the first four bullet points under paragraph 3 of the Complaint can be raised by the Plaintiff in the present action.

To the extent that the rule against claim splitting does not preclude the claims made in the Plaintiff's Complaint, the Court holds that the Plaintiff has failed to state a claim upon which relief can be granted. "To show entitlement of relief as required in Rule 8(a), the complaint must aver either the necessary elements of a cause of action or facts which would entitle the plaintiff to relief under the theory alleged."[12] The Plaintiff's whole Complaint, even including the parts precluded by *res judicata*, is held together mainly by bare boned allegations of "poor service" or errors from which she has demonstrated no harm. Based on the face of the Complaint the Court finds no suggestion that the Plaintiff's allegations give rise to a basis for a cause of action against the Defendant. While the Court recognizes the Plaintiff is proceeding

---

[11] *RSS Acquisition, Inc.*, 1999 WL 1442009, at *3-*4.

[12] *American Ins. Co. v. Material Transit, Inc.*, 446 A.2d 1101, 1104 (Del. Super. 1982).

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

NINA SHAHIN,                )
                                     )
                Plaintiff,    )      C.A. No.: 06C-10-027 RBY
                                     )
v.                                 )      NON-ARBITRATION
                                     )
DEL-ONE DELAWARE FEDERAL    )      TRIAL BY JURY DEMANDED
CREDIT UNION,                )
                                     )
                Defendant.   )

## MOTION FOR ATTORNEY'S FEES AND COSTS

Defendant, Del-One Delaware Federal Credit Union ("Del-One") by and through its

undersigned counsel, hereby moves this Court for an Order requiring Plaintiff to pay all of the

attorney's fees incurred in connection with its defense of this action. In support of this motion

defendant avers as follows:

1.     On or about October 20, 2006, Plaintiff filed a Complaint against Del-One for

alleged incidents involving banking transactions that occurred in October 2003, May 2004,

December 2004, March 2005 and June 2005. (D.I. 2 at ¶ 3).

2.     Del-One filed its Answer and Affirmative Defenses in this action on November

15, 2006 (D.I. 9), and its Motion for Judgment on the Pleadings on December 21, 2006 (D.I. 12).

3.     This suit was the latest in a series of lawsuits and appeals that Plaintiff has

brought against Del-One over the past eighteen months, all involving meritless claims or claims

that have either already been considered and decided in favor of Del-One on the merits in other

Courts of this State, or that were pending before other Courts of this State.

4.     A hearing on defendant's Motion for Judgment on the Pleadings was held on

1

                                                   065810.1001

January 19, 2007.

     5.     During that hearing the Court granted defendant's motion and ordered that based on the record and facts presented in the case, and request by counsel, that the Plaintiff be required to pay the attorney's fees and expenses incurred by Del-One to defend the case.

     6.     The Court entered a written Order in this matter on January 22, 2007.[1] (D.I. 24).

     7.     Attached to this motion is a declaration of defendant's counsel, detailing the time, fees and expenses incurred defending this case. The total fees and disbursements of $6,464.79 are well in accord with usual practices and charges in this area of law, given the nature and extent of the case.

     WHEREFORE, it is respectfully requested that as ordered during the January 19, 2007 hearing, the plaintiff be assessed the attorney's fees and costs incurred by defendant in defending this action.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Monté T. Squire, Esquire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-391
Telephone: (302) 571-6713
msquire@ycst.com

*Attorney for Defendant Del-One Delaware Federal Credit Union*

Dated: February 23, 2007

---

[1]     However, the written Order did not contain the provision for attorney's fees and there is no transcript available from the January 19, 2007 hearing.

2

          

IN THE SUPREME COURT OF THE STATE OF DELAWARE

Mazen & Nina Shahin

    Plaintiffs Below,
    Appellant,

    v.

Delaware Federal Credit Union

    Defendant Below,
    Appellee,

No. 93, 2007



# MOTION TO VACATE SUPERIOR COURT ORDER OF 16/2007 AWARDING ATTORNEY'S FEES

Plaintiffs-appellants do hereby file this Motion to the Supreme Court of the State of Delaware to vacate the order of judgment of Superior Court, in and for Kent County, by Robert B. Young, dated March 16, 2007 in case # 06C-10-027(RBY) that has been attached to this Motion as an Attachment A for the following reasons:

1. The appellants received the Notice from the Superior Court dated 2/26/2007 signed by Mei-Ling Cosgrove, Civil Case Manager to Judge Young, notifying both parties to this lawsuit that the Motion for the Attorney's Fees "was not filed properly according to the civil case management plan " and should have been "re-

filed" (Attachment B).   We have not received that "re-filed" Motion either because it has not been refiled or the attorney did not bother to mail us a copy.  In either case, we, the appellants, were not aware of the "re-filing" of the Motion and did not have opportunity to oppose that Motion.  The appellants understand that courts in the State of Delaware do not bother to respect their constitutional rights of "due process' and "equal protection" to provide proper notice of the opposing party's actions so that the plaintiffs-appellants are disadvantaged but they still cannot accept such a system of violation of their constitutional rights.

2.    Rule 54(d) of the Rules of Civil Procedure for the Superior Court of the State of Delaware provides that the "costs shall be allowed as of course to the prevailing party upon application to the Court within ten (10) days of the entry of final judgment unless the Court otherwise directs.  In this particular case there is no 'final judgment" as yet since the case is appealed to the Supreme Court and the appellants' opening brief is due on April 9, 2007.

3.    Rule 54(i) stipulates that "No appearance fees for attorneys will be permitted or taxed as costs in any action or cause in the Superior Court.

4.  Honorable Judge Robert Young falsified facts and the record of the JP Court in the case that lies in the core of this lawsuit and denied that the violation of the federal law had occurred, the fact clearly established by the JP Court.  That decision has been affirmed  by this court and is now appealed on constitutional rights violations to the Supreme Court of the US.    Honorable Robert Young denied the appellants the statutory damages under the provisions of the Regulation CC, violation of which had been clearly established by the JP Court,  yet, he awarded attorney's fees in the case that has no "final decision" as yet.  It is a clear manifestation of judicial harassment.

The appellants respectfully request this court to vacate the decision of the Superior Court on all the above-mentioned grounds.

Respectfully submitted on this 30th day of March, 2007,

on behalf of the plaintiffs-appellants,

*N. Shahis.*

Nina Shahin

103 Shinnecock Rd.
Dover, DE 19904
(302)678-1805

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

**Mazen & Nina Shahin**

      **Plaintiffs Below,**
      **Appellants,**

      **v.**

**Delaware Federal Credit Union**

      **Defendant Below,**
      **Appellee,**

**No. 93, 2007**

## MOTION FILED UNDER RULE 30(b) OF THE SUPREME COURT RULES OF CIVIL PROCEDURE

Plaintiffs-Appellants file their reply to the Del-One Delaware Federal Credit Union Opposition Motion to the Appellant's Motion to vacate the Superior Court decision awarding attorney's fees. Here are their opposing comments point by point:

1. The Appellants would question at this point the reason why the attorney has the docket history and the appellants were not provided with a copy. It appears that the procedures were unfairly applied to the Appellants and the Appellee. The Appellants obtained their copies only on April 16, 2007.

2. Defendant-Appellee's Motion for Judgment on Pleadings was received by the Plaintiffs-Appellants sometime at the end of December 2006.

3. The attorney's claim that the lawsuits were meritless is not shared by the Plaintiffs-Appellants and, apparently, not by the Supreme Court of the United States because it has docketed their Petition for Writ of Certiorari on gross violations of the Plaintiffs-Appellants' constitutional rights of "due process' and "equal protection".

4-5. Claim that a hearing was held on Motion for Judgment on the Pleadings on January 19, 2007 is a **LIE** because there has never been any hearings in this case in

any way, shape or form.    As a matter of fact, Plaintiffs-Appellants filed their Pleadings on January 19, 2007 and the judge rendered his decision to dismiss with prejudice on January 22, 2007 without any hearings whatsoever. Therefore, there is no any docket entry to prove that the hearing took place or existence of a transcript (Appellant's copies of two versions of the docket are attached as  Appendix A and B). There were no any requests made for attorney's fees at the nonexistent hearing. Attorney's claim that the hearing took place is made in violation of the canon 3.3(a)(a) of the  Delaware Lawyers' Rules of Professional Conduct that prohibits lawyers to make false statements of fact.

6. Since there was no any hearing on the Pleadings, there was no any order on the attorney's fees.  It appears from the dockets that the attorney first filed his Motion for Attorney fees on February 23, 2007 and then on February 26, 2007 because there is no any mentioning of award for attorney's fees in the judge's decision of January 22, 2007. Here again the attorney lies about the order of the court about attorney's fees.

7. Attorney does not mentioned that the Civil Case Manager to the Judge Young, Mei-Ling Cosgrove, filed a letter notifying attorney that his Motion for Attorney's Fees and Costs was "not filed properly".  That letter is dated February 26, 2007 (see Appendix C).  A copy of the letter was mailed to the Plaintiffs-Appellants on the same date (see a copy of the envelope at Appendix D).  The Plaintiffs-Appellants received that letter on February 27, 2007.  Since there is no any docket entry for that letter, the Appellants would assume that the attorney received his copy by mail too and, therefore, it should have happened at least on the same or even following day because it takes an additional day to deliver mail to Wilmington as oppose to Dover.

Yet, attorney claims that his second filing on February 26, 2007, that was delivered to the Appellant, Nina Shahin, on February 28, 2007 was in response to that letter. If it is, then Appellants should assume that the communications between the judge or his office and the attorney on that letter were made on February 26, 2007 in *ex part* form, collusion form or both.

8. Since the Plaintiffs-Appellants were fooled by the court letter and the attorney's filings they had no opportunity to oppose the Motion for the Attorney's Fees and Costs and the judge entered his decision on March 16, 2007, again without any hearing.

9-10-11. The attorney in his argument accused the Plaintiffs-Appellant in failing to prove that their request to vacate the decision of the Superior Court regarding attorney's fees and costs is not based on well-settled Delaware law. Completely opposite is true. Rule 54(i) of the Superior Court specifically prohibits attorney fees from being awarded in the Superior Court **PERIOD**. Rule 54(d), (f), (g) and (h) specifically deals with fees that are considered "court costs" and are subject to the judge's discretion. The attorney makes a reference to two cases: *Walsh v. Hotel Corp of America and Donovan v. Delaware Water & Air Resources Commission.*[1] The Appellants are shocked with such level of incompetence of the attorney and hereby raise an issue of violation of canon 1.1 "Competence" standard by this attorney. Although in the first case the decision of the court was positive but in very limited circumstances that do not apply to this case, "We are of the opinion that counsel fees should be allowed, in the absence of **abuse of process** (Here it is obvious that the

---

[1] *Walsh v. Hotel Corp of America*, 231 A.2d 458 (Del 1967); *Delaware Water & Air Resources Commission,* 358 A.2d. 717 (Del. 1976).

abuse of process had occurred with notices, hearing, and the communications between the judge and the attorney on the Motion for the attorney's costs and fees; **comments added by the Appellants) only for a victorious attack upon the attachment itself, and not for the presentation of defenses not predicted upon defects of the process),** *Walsh v. Hotel Corp of America*, 231 A.2d 458, 462 (Del 1967). Moreover, Rule 54 in its present form was last amended effective July 1, 1999, so a 1967 case regarding attorney's fees is superseded and is what is called a "bad law". In the second case there is no any discussion of attorney fees whatsoever and the decision of the court was to oppose any court costs at all in that case.[2] There are no cases that award attorney's fees after July 1, 1999[3].

The Plaintiffs-Appellants, therefore, submit their request to vacate the judge's decision of March 16, 2007, awarding costs and fees to the attorney in violation of Superior Court rule 54(i).    The Appellants also raise the issue of violation of procedural norms of notice and hearing which are basic requirements of the constitutional rights of "due process' and "equal protection" guaranteed by the 14th Amendment to the US Constitution and specifically request this court to rule on the issue of the attorney's competence and violations of rules of professional conduct and the issue of harassment by the judge, Honorable Robert B. Young.

Respectfully submitted by:

**Nina Shahin for Appellants**
103 Shinnecock Rd.
04/19/2007                                      Dover, DE 19904 (302)678-1805

---

[2] *Delaware Water & Air Resources Commission,* 358 A.2d. 717 (Del. 1976); The quotation in that case is made to 10 *Del.C.* § 5101 : "There may be circumstances under which costs in civil suit do not go to party to whom final judgment is awarded", p. 718; more discussion to the same on page 722 [11].

[3] *Cf. Midcap v. Sears, Roebuck and Co.,* 2004 WL 1588343 (Del. Super. May 26, 2004).

# APPENDIX A

SUPERIOR COURT - KENT COUNTY
AS OF 04/16/2007                          PAGE     1

06C-10-027
FILED  October 20,2006              PERSONAL INJURY
JUDGE:  RBY                         NON ARBITRATION
STATUS:  NEW   E-FILED: YES         JURY TRIAL

PRO SE                NINA SHAHIN
                             -- VS --
SQUIRE MONTE' TERRELL   DEL-ONE DELAWARE FEDERAL CREDIT UNION,
                        FORMERLY, DE FEDERAL CREDIT UNION

10/20/2006    1  INITIAL COMPLAINT - PERSONAL INJURY - COURT TO SCAN
                 DOCUMENTS - FILED PRO SE.
                 (PRO SE - N.SHAHIN)
                 LMR

10/23/2006       SUMMONS SENT TO KENT COUNTY SHERIFF FOR SERVICE UPON
                 DEL-ON DELAWARE FEDERAL CREDIT UNION, FORMERLY
                 DE FERDERAL CREDIT UNION
                 LMR

11/01/2006    2  WRIT RETURNED
                 SERVED DEL-ONE DELAWARE FEDERAL CREDIT UNION
                 FORMERLY DE FEDERAL CREDIT UNION BY LEAVING WITH JANE
                 WASHINGTON, RECEPTIONIST ON 10/27/2006
                 (JIM HIGDON) LMR

11/15/2006    3  DELAWARE DEL-ONE'S ANSWER TO
                 COMPLAINT
                 (G.MORRIS/M.SQUIRE) MSC

11/17/2006    4  ENTRY OF APPEARANCE OF MONTE T SQUIRE, ESQ.
                 (M.SQUIRE) MSC

11/27/2006    5  PLAINTIFF'S ANSWER TO
                 COMPLAINT
                 (PRO SE) MSC

12/21/2006    6  NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS
                 (M.SQUIRE) MSC

01/19/2007    7  PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
                 GRANTED, JUDGE YOUNG WILL DO AN ORDER.
                 JUDGE YOUNG
                 MSC

01/19/2007    8  PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON PLEDINGS
                 (N.SHAHIN) MSC

01/22/2007    9  SO ORDERED, ON 01/22/2007 BY JUDGE YOUNG,
                 ON 10/20/06, NINA SHAHIN FILED A PRO SE COMPLAINT
                 AGAINST THE DEFENDANT, DEL-ONE DELAWARE FEDERAL CREDIT
                 UNION.  THE DEFENDANT, AFTER ANSWERING THE COMPLAINT,
                 FILED A MOTION FOR JUDGMENT ON THE PLEADINGS OR A
                 MOTION TO DISMISS.  FOR THE FOLLOWING REASONS, THE
                 MOTION SHOULD BE GRANTED.

```
              SUPERIOR COURT - KENT COUNTY
                 AS OF 04/16/2007                    PAGE      2

06C-10-027

              ACCORDINGLY, THE DEFENDANT'S MOTION IS GRANTED AND THE
              COMPLAINT IS DISMISSED WITH PREJUDICE
              JUDGE YOUNG
              MSC

02/26/2007    10  DEFENDANT'S MOTION FOR ATTORNEY FEES
                  (M.SQUIRE) MSC
```

# **APPENDIX B**

Click to Print                                      Printed on: Monday, April 16, 2007 12:06:36 EDT

## Case History Search
Search Created:
Monday, April 16, 2007 12:06:36 EDT

| | | | | | |
|---|---|---|---|---|---|
| **Court:** | DE Superior Court-Kent County | **Judge:** | Young, Robert B | **File & Serve Live Date:** | 10/20/2006 |
| **Division:** | Civil | **Case Number:** | 06C-10-027-RBY | **Document(s) Filed:** | 53 |
| **Case Type:** | CPIN - Personal Injury | **Case Name:** | Shahin, Nina vs Del One Delaware Federal | **Date Range:** | All |

1-21 of 21 transactions    <<Prev Page 1 of 1 Next>>

| Transaction | ▽Date/Time | Option | Case Number Case Name | Authorizer Organization | # | Document Type | Document Title | Size |
|---|---|---|---|---|---|---|---|---|
| 14166613 | 3/19/2007 11:44 AM EDT | File Only | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Robert B Young, DE Superior Court-Kent County | 37 | Order | Moot (Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs) • Linked to (1) | 0.1MB |
| 14166575 | 3/19/2007 11:43 AM EDT | File Only | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Robert B Young, DE Superior Court-Kent County | 36 | Order | Moot (Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs) • Linked to (1) | 0.1MB |
| 14148327 | 3/16/2007 10:44 AM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 35 | Order | Order | 0.3MB |
| 13928862 | 2/26/2007 5:05 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Monte T Squire, Young Conaway Stargatt & Taylor LLP-Wilmington | 34 | Motion | Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs • Linked to (1) | 0.1MB |
| | | | | | | Notice | Notice of Motion for Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | | Proposed Order | Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs • Linked from (1) | 0.1MB |
| | | | | | | Affidavit | Declaration of Counsel for Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | | Certificate of Service | Certificate of Service of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | | Exhibits | Exhibit A to Declaration of Counsel for Defendant Del-One Delaware Federal Credit Union's | 0.1MB |

| | | | | | | Motion For Attorney's Fees and Costs | |
|---|---|---|---|---|---|---|---|
| 13924109 | 2/26/2007 2:02 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 33 Letter | Letter | 0.2MB |
| 13907437 | 2/23/2007 3:04 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Monte T Squire, Young Conaway Stargatt & Taylor LLP-Wilmington | 32 Motion | Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs • Linked to (1) | 0.1MB |
| | | | | | Notice | Defendant Del-One Delaware Federal Credit Union's Notice of Motion for Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Proposed Order | Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs • Linked from (1) | 0.1MB |
| | | | | | Affidavit | Defendant Del-One Delaware Federal Credit Union's Declaration of Counsel to Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Certificate of Service | Certificate of Service of Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| | | | | | Exhibits | Exhibit A to Declaration of Counsel for Defendant Del-One Delaware Federal Credit Union's Motion For Attorney's Fees and Costs | 0.1MB |
| 13541435 | 1/22/2007 3:29 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 26 Appendix | Exhibit A | 0.5MB |
| | | | | | 27 Appendix | Exhibit B | 0.7MB |
| | | | | | 28 Appendix | Exhibit C | 0.7MB |
| | | | | | 29 Appendix | Exhibit D | 3.5MB |
| | | | | | 30 Appendix | Exhibit E | 0.3MB |
| | | | | | 31 Appendix | Exhibit F | 0.9MB |
| 13540353 | 1/22/2007 2:39 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa M Robinson, DE Superior Court-Kent County | 25 Reply Brief | Plaintiff's reply to motion for judgment on pleadings | 1.4MB |
| 13534469 | 1/22/2007 11:03 AM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Robert B Young, DE Superior Court-Kent County | 24 Order | Order re: Defendants' Motion for Judgment on the Pleadings or Motion to Dismiss | 0.1MB |
| 13259356 | 12/21/2006 2:59 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Monte T Squire, Young Conaway Stargatt & Taylor LLP-Wilmington | 12 Motion | Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings • Linked to (1) | 0.2MB |
| | | | | | 13 Notice | Defendant Del-One | 0.1MB |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | Delaware Federal Credit Union's Notice of Motion for Motion For Judgment On The Pleadings | |
| | | | | | 14 Proposed Order | Proposed Order of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | | 15 Certificate of Service | Certificate of Service of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | | 16 Exhibits | Exhibit A of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | | 17 Exhibits | Exhibit B of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | | 18 Exhibits | Exhibit C of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | | 19 Exhibits | Exhibit D of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | | 20 Exhibits | Exhibit E of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | | 21 Exhibits | Exhibit F of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| | | | | | 22 Exhibits | Exhibit G of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.1MB |
| | | | | | 23 Exhibits | Exhibit H of Defendant Del-One Delaware Federal Credit Union's Motion for Judgment On The Pleadings | 0.3MB |
| 12992597 | 11/22/2006 11:09 AM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Gregory A Morris, Liguori Morris & Yiengst | 11 Substitution of Counsel | Substitution of Counsel | 0.1MB |
| | | | | | Certificate of Service | Certificate of Service for Substitution of Counsel | 0.1MB |
| 12951612 | 11/17/2006 3:07 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One | Monte T Squire, Young Conaway Stargatt & Taylor LLP- | 10 Entry of Appearance | Entry of Appearance of Young Conaway Stargatt & Taylor, LLP by Monte T. Squire. | 0.1MB |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Delaware Federal | Wilmington | | | • Linked to (1) | |
| | | | | | | Certificate of Service | Certificate of Service to Entry of Appearance of Young Conaway Stargatt & Taylor, LLP by Monte T. Squire | 0.1MB |
| 12926358 | 11/15/2006 4:30 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Gregory A Morris, Liguori Morris & Yiengst | 9 | Case Information Statement | Superior Court Civil Case Information Statement • Linked to (1) | 0.1MB |
| | | | | | | Answer | Defendant's Answer to Complaint • Linked to (1) | 0.1MB |
| | | | | | | Form 30 Interrogatories | Defendant's Answers to Form 30 Interrogatories • Linked to (1) | 0.1MB |
| | | | | | | Affidavit | Affidavit to Defendant's Answers to Form 30 Interrogatories • Linked to (1) | 0.1MB |
| | | | | | | Certificate of Service | Certificate of Service for Defendant's Answer to Complaint and Defendant's Answers to Form 30 Interrogatories • Linked to (1) | 0.1MB |
| 12799389 | 10/30/2006 5:00 PM EST | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 8 | Sheriffs Return | Sheriff Return on Defendant Del One Delaware Federal Credit Union | 0.1MB |
| 12799382 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 1 | Case Information Statement | CIS Form | 0.1MB |
| 12799383 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 2 | Complaint | Complaint • Linked from (10) | 0.1MB |
| 12799384 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 3 | Praecipe | Praecipe | 0.1MB |
| 12799385 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 4 | Summons | Summons | 0.1MB |
| 12799386 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 5 | Exhibits | Exhibit to Complaint | 0.3MB |
| 12799387 | 10/20/2006 5:00 PM EDT | File And Serve | 06C-10-027-RBY Shahin, Nina vs Del One Delaware | Lisa Robinson, DE Superior Court-Kent County | 6 | Certificate of Value | Certificate of Value | 0.1MB |

| 12799388 | 10/20/2006 5:00 PM EDT | File And Serve | Federal 06C-10-027-RBY Shahin, Nina vs Del One Delaware Federal | Lisa Robinson, DE Superior Court-Kent County | 7 | Form 30 Interrogatories | Form 30 Interrogatories | 0.1MB |

1-21 of 21 transactions   <<Prev Page 1 of 1 Next>>

# **APPENDIX C**



**STATE OF DELAWARE**
**SUPERIOR COURT**
KENT COUNTY COURTHOUSE
38 THE GREEN
DOVER, DELAWARE 19901

Lisa M. Robinson
PROTHONOTARY

TELEPHONE: 739-5328
739-3184

February 26, 2007

Monte T. Squire, Esq.
P.O. Box 391
Wilmington, DE 19899

Re:    Nina Shahin v. DEL-ONE DELAWARE FEDERAL CREDIT UNION
       Civil Action: 06C-10-027

Dear Mr. Squire,

Please re-file your Motion for Attorney's Fees and Costs. It was not filed properly according to the civl case management plan. It does not need to be noticed for a date. When the courtesy copy is filed with the Court it will be sent up to Chambers for consideration.

I apologize for the confusion and inconvenience to you.

Sincerely,

Mei-Ling Cosgrove
Civil Case Manager to Judge Young

Cc: Nina Shahin

# **APPENDIX D**



PROTHONOTARY
KENT COUNTY SUPERIOR COURT
KENT COUNTY COURTHOUSE
38 THE GREEN
DOVER, DE 19901
"OFFICIAL BUSINESS, PENALTY FOR PRIVATE USE $300"
020310

Nina Shahin
103 Shinnecock Rd.
Dover, DE 19904

## CERTIFICATE OF SERVICE

I, NINA SHAHIN, CPA

Hereby certify that two copies of the MOTION FILED UNDER RULE

30(b) OF THE SUPERIOR COURT RULES OF CIVIL PROCEDURE were

mailed by a certified mail with a return receipt on this day of April 19,

2007 to the Defendant's attorney at the following address:


Monté T. Squire., Esq. ,
The Brandywine Bldg.,
100 West St., 17th Floor
Wilmington, DE 19801


Date: _4/19/2007_               _____(signature)_____

                                NINA SHAHIN, CPA

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAZEN and NINA SHAHIN, | § | |
| | § | No. 93, 2007 |
| Plaintiffs Below, | § | |
| Appellants, | § | Court Below—Superior Court |
| | § | of the State of Delaware, in |
| v. | § | and for Kent County |
| | § | |
| DEL-ONE DELAWARE FEDERAL | § | |
| CREDIT UNION, | § | |
| | § | |
| Defendant Below, | § | C.A. No. 06C-10-027 |
| Appellee. | § | |

Submitted: May 22, 2007
Decided: June 11, 2007

Before **HOLLAND, BERGER** and **JACOBS,** Justices.

## O R D E R

This 11th day of June 2007, it appears to the Court that:

(1)    The plaintiff-below/appellant, Nina Shahin, has appealed the Superior Court's order of January 22, 2007, that dismissed Shahin's complaint filed against defendant-below/appellee Del-One Delaware Federal Credit Union ("Del-One"). Shahin filed the notice of appeal on February 20, 2007.

(2)    On February 26, 2007, Del-One filed a motion for attorney's fees in the Superior Court. The Superior Court issued a ruling on Del-One's motion on March 16, 2007.

(3)    Based upon a limited review of the record, the Court has concluded that the Superior Court was without jurisdiction when it ruled upon Del-One's motion for attorney's fees because that motion was not pending at the time Shahin filed this appeal.[1]  Shahin's appeal filed on February 20, 2007, invoked the jurisdiction of the Court and served to preclude further Superior Court proceedings as of that date.[2]  Consequently, the Court will vacate the Superior Court's March 16, 2007 order on attorney's fees as improvidently issued and will remand this matter to the Superior Court for further proceedings.

(4)    The Court will take no action with respect to the parties' pending submissions on appeal as those filings are hereby rendered null and void.[3]  The Clerk will issue a new brief schedule to the parties upon the Superior Court's return of this matter from remand.

NOW, THEREFORE, IT IS ORDERED that:

A.    The Superior Court's order of March 16, 2007, is VACATED, *sua sponte*, and this matter is REMANDED, with jurisdiction retained, to the Superior Court for a hearing on Del-One's motion for attorney's fees.

---

[1] Compare *Lipson v. Lipson*, 799 A.2d 345 (Del. 2001).
[2] *Bowen v. E.I. DuPont de Nemours and Co., Inc.*, 879 A.2d 920, 922 (Del. 2005) (citing *Radulski v. Delaware State Hosp.*, 541 A.2d 562, 567 (Del. 1988); *Eller v. State*, 531 A.2d 951, 952 (Del. 1987)); *Dixon v. DCSE/Dixon*, 1993 WL 102557 (Del. Supr.).
[3] Those submissions include Shahin's motion to vacate and all related responses, *e.g.*, Shahin's "Motion Filed under Rule 30(b)," Shahin's opening brief and appendix, and Del-One's motion to affirm.

B.    The Superior Court is directed to issue a written decision on

Del-One's motion for attorney's fees within sixty days and file with this

Court a transcript of the hearing on remand.[4]

BY THE COURT:


/s/ Carolyn Berger
Justice

---

[4] Del. Supr. Ct. R. 19(c) (2007).

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

NINA AND MAZEN SHAHIN    )
    )
VS.    ) Civil Action No. CA 07A-02-001(WLW)
    )
DELAWARE FEDERAL CREDIT)
UNION, CURRENTLY DEL-ONE  )

## APPEAL OF THE DECISION OF COURT OF COMMON PLEAS DENYING
## APPELLANTS ACCESS TO THE TAPE OF HEARING OF JANUARY 17, 2007

Here come the appellants, Nina and Mazen Shahin, and file an Appeal for access

to the tape of hearing at Court of Common Pleas held on January 17, 2007 denied to them

by the decision of the presiding judge of the Court of Common Pleas entered on May 10,

2007. The court procedures of the hearing held on January 17, 2007 were rigged with the

following gross violations:

**1.**      *Ex Parte* **Communications.**

The most egregious violation was *ex parte* communications of the judge with the

defendant's representative, attorney and all the witnesses. In the beginning of the session

the presiding judge, Honorable Rosemary Betts Beauregard, declared that "We're in

close quarters because we don't have a courtroom this morning. So this is a little different

setup than we usually have, but we will all get through this and it's actually quite close

and intimate".[1]   It was "quite close and intimate" OK, but it was too close and too

intimate than appellants would accept or agree to.   The session was 30 minutes late and

when the appellants were waiting in the hall with general public, the appellee's attorney,

witnesses, and representative were assembled in the private quarters of the judge. Every

---

[1] Transcript of the hearing, page 3.

1

five minutes the bailiff would loudly call in the public hall for Richard Strosser, the DEFCU CEO and witness, who apparently was late and causing that delay. The appellants would question the reason the DEFCU was accorded such a special treatment when the court session was delayed because of absence of one witness. When the appellants were finally invited into the courtroom the judge, appellee's attorney and Ms Renée Thompson were already there which was a clear indication of *ex parte* communications of the judge with the appellee before the court session. When the appellant asked about the witnesses the she was told that "They're out in the waiting room"[2] That waiting room was also in the judge's quarters because no witness was waiting in the public hall and apparently had private *ex parte* communications with the judge. When the court session was over, the appellants were required to wait for almost an hour for a court decision again in the public hall when the appellee's attorney and Ms Thompson stayed in the judge's quarters apparently for private *ex parte* post court session consultations with the judge on the wording of the court decision and when the appellants were invited to the courtroom for a decision, the judge, DEFCU attorney and Ms Thompson had been already there.

**2.    Violation of the Rule on Witnesses**

It appears that Ms R. Thompson who is a DEFCU compliance officer was participant along with the attorney in *ex parte* pre and post court session communications with the judge and was allowed to stay during the entire court hearing in violation of the Rule on witnesses. It is especially grave violation in view of her position of the compliance officer of the DEFCU. She was allowed to hear a testimony of each and every witness. As a result, she declined to answer some of the questions referring to the

---

[2] Transcript, page 4.

answers of other witnesses which demonstrate that she was tainted by those testimonies and could not be properly deposed.[3]

**3.    Falsification of the Transcript**

As a result of those "intimate and close" judge's quarters, violation of the Rule on Witnesses and *ex parte* communications of the judge with the representative, attorney, and witnesses of the appellee the transcript of the court hearing held on January 17, 2007 was changed to the degree that amounts to falsification. In particular, in the testimony of the DEFCU CEO, Duke Strosser, the amount of money he allegedly offered during his telephone conversation with one of the appellant on July 21, 2005 was "a couple of thousand of dollars" was removed from his testimony and replaced with "a significant sum of money"[4]. Instead much reduced amount was planted in the testimony of Ms. Thompson[5], closing speech of the appellant[6] and the attorney[7]. Besides of all the inaccuracies that were also indicated in the appellant's motion that the Honorable judge Beauregard dismissed the above mentioned violations indicate the gross violations of the appellants' constitutional rights of "due process' and "equal protection" guaranteed by the 14th Amendment of the US Constitution.

The appellants, therefore, respectfully request this court to override the Court of Common Pleas judge's decision denying their access to the tape of hearing to correct these falsifications as well as amending the section of the transcript in "appearance" at

---

[3] See her answer "We've already heard testimony from Mr. Strosser" on page 58.
[4] See Transcript, page 39.
[5] See Transcript, on page 82 she allegedly mentioned $ 1,005, as well as on the page 83.
[6] See Transcript, page 86 were the appellant allegedly mentioned $ 1,000 which he had never did.
[7] See Transcript, page 90 where attorney allegedly referred to the words of Mr. Strosser about $ 1,000 which he had never mentioned.

the court to include Ms Thompson who was present the entire court session in the capacity of a witness.

For the plaintiffs-appellants:

Nina Shahin

May 17, 2007

Mazen Shahin
103 Shinnecock Rd.
Dover, DE 19904
Tel. # (302)678-1805

4

IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

MAZEN SHAHIN AND                    :
NINA SHAHIN                          :
        Plaintiffs              :

    Vs.                                    :          C.A. No: 05-10-0113AP

DELAWARE FEDERAL                    :
CREDIT UNION
        Defendants

## DECISION AND ORDER ON PLAINTIFF'S MOTION TO AMEND THE RECORD AND TO OBTAIN THE AUDIO TAPES OF THE HEARING

The Plaintiffs in this matter have motioned the Court to amend portions of the record from the trial held on January 17th of this year, and to obtain access to the audiotape of those proceedings. For the reasons set forth below, the motion is denied.

## BACKGROUND

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the Court at any time of its own initiative or on the motion of any party and after such notice, if any, as the Court orders." *CCP Civ. R. 60(a)*. Under *10 Delaware Code § 4101*, the Court before whom a record is, *may* order the amendment of any clerical error in any part of such record, which will ***tend to the furtherance of justice***. (Emphasis Added).

Here, the Plaintiffs requests do not tend to the furtherance of justice as required by the statute. They are inconsequential proofreading which serves no legitimate purpose. The Court Reporter made several changes to the transcript that she found to be important, but has refused to make the additional modifications that the Plaintiffs request. After reviewing the proposed amendments set forth by the Plaintiffs, I agree that changes are not necessary. I therefore decline to order that the transcript be amended.

As to the request for access to the audiotape, I deny this motion as well since the Plaintiffs have failed to set forth any legal grounds to support a right to have access to these records.

For the foregoing reasons, the motion is **DENIED.**

It is so **ORDERED**, this $\underline{10}^{th}$ day of May, 2007.

Rosemary Betts-Beauregard, Judge

**CERTIFICATE OF SERVICE**

I certify that two true and correct copies of the foregoing Appeal were served this

17th date of May, 2007 by personally delivering them to the office of Gregory A. Morris

at 46 Green in Dover and giving it to ⟨signature⟩ who was asked to sign for the

receipt.

Signature of the Recipient: ⟨signature⟩

May 17, 2007

⟨signature⟩

Nina Shahin

For the Appellants:

103 Shinnecock Rd.
Dover, DE 19904

5

NINA SHAHIN, CPA, MAS, MST
103 SHINNECOCK RD. DOVER, DE 19904
Tel. (302) 678-1805
Fax (302) 678-0219
E-mail: nshahin@comcast.net

May 30, 2007

**Honorable John Conyers Jr., Chair**
**House of Representatives Committee on the Judiciary**
2426 Rayburn House Office Building
Washington, D.C. 20515

**Honorable Patrick J. Leahy, Chair**
**United States Senate Committee on the Judiciary**
224 Dirksen Senate Office Building
Washington, DC 20510

**Congressman Jerrold Nadler, Chair**
**United States House of Representatives Committee on the Constitution,**
**Civil Rights and Liberties**
2334 Rayburn House Office Building
Washington, DC 20515

cc:  **Senator Joseph R. Biden, Jr.**
201 Russell Senate Office Building
Washington, DC 20510

**Council on American-Islamic Relations**
453 New Jersey Ave., SE
Washington, DC 20003

**Office of the Assistant Attorney General**
**Civil Rights Division**
950 Pennsylvania Ave., NW
Washington, DC 20530

**FBI Baltimore**
2600 Lord Baltimore
Baltimore, MD 21244

The News Journal
950 West Basin Rd.
New Castle, DE 19720

## REDRESS OF GRIEVANCE

Honorable Messrs Conyers, Leahy, Nadler and Biden:

I am a naturalized American Citizen who came to this country on strong belief that this country is based on the rule of law and the respect of the Constitution. In practice I have obtained the proof that this is not true and I refuse to accept it.

1.  In June of 2005 the Delaware Credit Union misclassified my and my husband's local check as a non local and denied us the timely access to our money in violation of the requirement of the Expedited Funds Availability Act (EFA) adopted by the Board of Governors of the Federal Reserve System as a Regulation CC. After my husband's meeting with the manager of the branch did not help resolve the problem we filed a law suit in the Justice of the Peace Court of Kent County of the State of Delaware. During the hearing on the case on September 6, 2005 the communications in the court room were between the judge and the defendants only on the issues which the defendant mentioned in their response to our complaint. That response (which was full of false statements of facts) was not mailed to us either by the JP Court or by the defendant. Neither I nor my husband was allowed to speak in the courtroom without penalty and we were not allowed to question the witness (manager of the branch) whom we had subpoenaed to the court. The judge could not deny that the NSF fee was levied by mistake and in violation of the law but dismissed the case with prejudice and denied us the statutory damages provided by the Regulation CC on the premise that we "did not give an opportunity to pay the debt prior to filing the case" and that the defendant "offered to correct the error this was refused by the plaintiff" (See the decision of the JP Court in Appendix C of the attached Petition for the Writ of Certiorari). This conclusion was made by the judge on the basis of the false statements of facts of which we, the plaintiffs, were not aware of because had not received the response of the defendant and not given the opportunity to confront these assertions in the court. These were clear violations of the Constitutional rights of "due process" and "equal protection" guaranteed by the 14th Amendment of the US Constitution.

    We filed an appeal with the court of Common Pleas of the same county of the DE state. The opposing attorney filed a Motion for Summary Judgment attaching to the Motion the Defendant's Affidavit stating the same false facts as in the DE Federal Credit Union Response. During hearing on the Motion the attorney made false statements of facts in violation of his rules of professional conduct. My

statements, that we, as plaintiffs, were denied constitutional rights in the JP Court were dismissed by the presiding judge and the Motion was granted on the basis that the NSF has been paid after the JP Court decision and before the hearing on the Motion at the Court of Common Pleas, the fact irrelevant to our claim on the appeal for statutory damages provided by the federal law.    The transcript contained mistakes that blurred the essence of our claims on appeal and unauthorized addition but we had been denied access to the tape recordings of the hearing to correct the omissions, mistakes and unauthorized addition. On our appeal to the Superior Court the judge of the court in his decision falsified the facts found by the JP Court and claimed the JP Court found in favor of DE Federal Credit Union for $ 35 which was complete the opposite. We filed appeal to the Supreme Court of Delaware. The opposing attorney filed a Motion to Affirm in violation of all the terms of the DE Supreme Court Civil Rules 25(a) under which it can be filed.    Yet, the Supreme Court affirmed the decision of Superior Court that falsified the basic facts of the case.

We filed complaints with the Court on the Judiciary on violation of the professional rules by the judges of the JP Court and the Court of Common Pleas. We filed a complaint with the DE Disciplinary Board on violation of the canons of professional conduct by the attorney, yet both complaints were closed citing that on those violations the appropriate judge were supposed to raise the issues but the judge ignored the issues raised in our opening brief and falsified the basic facts of the case. Taking into consideration that both Court on the Judiciary and the Disciplinary Board operate under auspices of the Delaware Supreme Court in our Petition for Writ of Certiorari we raised a question of cover up by the Supreme Court of the state of Delaware of violations of our constitutional rights. The Writ of Certiorari was denied after the opposing attorney filed a waiver.

2.     We filed another lawsuit in the Superior Court of Delaware against the Delaware Federal Credit Union for damages in aggravated harassment (which the judge of the JP Court called "offer to correct the error" ) as a result of which my husband ended up in the emergency room of a local hospital with high blood pressure. We also asked for damages for perjury or presenting under oath false evidence to the Court of Common Pleas.    That case was assigned to the same judge that had falsified the facts in the previous case. Moreover, the judge who denied us the statutory damages provided for by the Regulation CC awarded the attorney's fees to the opposing attorney in violation of specific prohibition of these fees by the civil rules of the Delaware Superior court and the Delaware Constitution (see the attached Motion filed under the Rule 30(b) filed at the Supreme Court of Delaware.    We consider that as a judicial harassment especially since both decisions were made without any hearings whatsoever. The opposing attorney claims that hearing was held on some specific date but the transcript was not available (which is a false statement of fact prohibited by the canons of attorney's professional conduct). On that specific date we submitted our pleadings and have a clocked in copy in response to the opposing attorney's Motion for the Decision on Pleadings.    There is also evidence that there were either *ex parte*

communications of the attorney with the judge on the issue of awarding the attorney's fees, collusion or both. There is also evidence that there was a collusion between the judge of the Superior Court and the judges of the Supreme Court in the case mentioned above under paragraph 1 because the judge of the Superior Court referred in his decision to the decision of the Supreme Court which was issued two days after his decision and he could have known about that decision if there had been collusion between the judges of both courts. The opposing attorney also filed a Motion to Affirm in the Supreme Court of Delaware and we have no doubts that it would be affirmed although our basic constitutional rights of "due process" and "equal protection" were again grossly violated.

3.  The third case presently on appeal at Superior Court of Delaware is related to the second incident of the NSF fees connected to the same misclassified check. Although the judge of the Court of Common Pleas personally insulted my husband in this particular case we were allowed to call all witnesses we wanted and subpoenaed and question them in the Court of Common Pleas in appeal hearing. But the judge had *ex parte* communications with the Delaware Federal Credit Union (defendant's attorney) and the Credit Union compliance officer (Renée Thompson) who was allowed to be present during the whole hearing in violation of the Rule on Witnesses. As a result during her questioning she simply referred to the testimony of the CEO instead of answering questions posed to her. Also as a result of so close co-operation between the judge and the defendant the transcript of that appeal hearing was falsified by removing the amount of money the CEO of the DE Federal Credit Union allegedly offered to settle the case (or to "correct the error" as it was branded by the JP Court judge) and much reduced amount was planted in the closing speeches of my husband and the attorney and the testimony of Renée Thompson.

It is obvious that the judges of the entire judicial system in the state of Delaware are corrupt, the judicial system is broken and the mechanisms of the enforcing rules of professional conduct for judges and attorneys are non existent.

It appears that there are no rules of law in this country or respect for the Constitution. Is it because we represent ourselves and are Muslims? It appears that after September 11, the Muslims in the US are denied basic constitutional and civil rights. What would Your Honors advise us to do in our situation? What are the mechanisms of getting the law adopted by the Congress enforced and the Constitution respected when the judicial system does not work and denies us the legal remedies? Which court protects the rights guaranteed by the Constitution of the United States?

Your advice is very much appreciated because we have an impression that we live in the jungles because we had never had such feelings of helplessness although we went through the court of the former USSR in the darkest periods of Brezhnev era and courts of the state of Kuwait (an Arab country) and were able to prove our rights, rules of law and civil procedure in courts of those countries and prevail and have never been abused and insulted as in the courts of the state of Delaware.

I am sending a copy of the letter and the attachments to the Senator J. Biden whom I have asked for help in my problems with the DE Federal Credit Union before but never received a reply.

With the copy to the Department of Justice we submit a request for a full record audit for Office of Management and Budget (OMB) circular compliance.

Sincerely,

Nina Shahin, CPA


Attachment:    1. Copy of the Petition for Writ of Certiorari
               2. Copy of the decision of the Supreme Court of the US
               3. Copy of the Motion Filed under Rule 30(b) to the DE Supreme Court
               4. Copy of the Appeal to the Superior Court of Delaware

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-3540
_____

ELBERTA BERNICE LIEBERMAN

v.

STATE OF DELAWARE;
FAMILY COURT OF DELAWARE,

Appellants

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(D.C. Civil No. 96-cv-00523)
District Judge: The Honorable Gregory M. Sleet

_____

Submitted Under Third Circuit LAR 34.1(a)
July 7, 2003

BEFORE: NYGAARD, SMITH, and GREENBERG, Circuit Judges.

(Filed: July 14, 2003)

—————————

OPINION OF THE COURT

—————————

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellee, Elberta Bernice Lieberman, who had worked in a variety of positions at the Family Court of the State of Delaware for twenty years, filed a complaint with the EEOC claiming disability discrimination by her supervisor. The EEOC dismissed Lieberman's complaint, and sent her a right-to sue letter. In 1996, Lieberman then sued the State of Delaware and the Family Court of the State of Delaware,[1] and her complaint contains claims under (1) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (2) Section 504 of the Rehabilitation Act of 1973, 20 U.S.C. § 701 *et seq.*, (3) the anti-retaliation provisions of the ADA, and (4) the anti-retaliation provisions of the Rehabilitation Act. The District Court granted the State's motion to dismiss Lieberman's Title II claims on the basis of Eleventh Amendment immunity but denied the State's motion to dismiss Lieberman's Rehabilitation Act claims. The State of Delaware appealed. Since we find that the District Court had jurisdiction over the Rehabilitation Act claims and that *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir. 2002), controls the Rehabilitation Act issue, we will affirm.

———————————————

1.    In 1997, at the request of Lieberman, the District Court stayed this matter for additional EEOC investigation. A year later, the EEOC dismissed the complaint and sent another right-to-sue letter.

2

First, appellants argue that, because Article II, § 2, clause 2 of the U.S. Constitution vests the Supreme Court with original jurisdiction where a state is a party, the District Court lacks jurisdiction to hear the suit. Appellants do not mention, however, the well-established principle that Congress can give lower federal courts concurrent jurisdiction over matters where the Supreme Court has original jurisdiction. *Ames v. Kansas*, 111 U.S. 449 (1884). In fact, ever since the Judiciary Act of 1789, Congress has assumed that the constitutional grant of original jurisdiction to the Supreme Court could be made concurrent with the jurisdiction of the lower federal courts. We maintain the unremarkable position that 28 U.S.C. § 1331 properly provides the District Court with jurisdiction over this matter.

Turning to the Eleventh Amendment issue, we note that, while this case was pending with us, but before briefing, we decided *Koslow v. Pennsylvania*, 302 F.3d 161 (3d Cir. 2002). In *Koslow*, a disability discrimination case under § 504 of the Rehabilitation Act, we had to determine whether the Commonwealth of Pennsylvania had waived its sovereign immunity by accepting certain federal funds for the Department of Corrections. *Koslow*, 302 F.3d at 165. We determined that Congress could require a state to waive its immunity to suit under the Rehabilitation Act as a condition for receiving federal funds and had done so. *Id.* at 172. Since the Commonwealth of Pennsylvania had accepted federal financial assistance under the State Criminal Alien Assistance Program, and provided these federal funds to the Department of Corrections,

3

we concluded that the Commonwealth had waived immunity for § 504 claims against its

Department of Corrections under the Rehabilitation Act. *Id.* at 172.

Our decision in *Koslow* is on all fours with this case. At all relevant times,

Lieberman worked in an activity or program of the Family Court that is alleged to be a

recipient and beneficiary of federal financial assistance. We therefore affirm the District

Court's thoughtful determination that the appellants have waived their Eleventh

Amendment immunity, and that the appellants' motion to dismiss Lieberman's claims

under Section 504 of the Rehabilitation Act should have been denied.

---

TO THE CLERK:

Please file the foregoing opinion.

_____/s/ Richard L. Nygaard_____
Circuit Judge

# U.S. Census Bureau

## Federal, State, and Local Governments
### Federal Assistance Award Data System
### 2006 3rd Quarter - Summary Table

Main                                                    Back To 2006 3rd Quarter FAADS

### DELAWARE

Dollar Amounts in Thousands

| Type of Assistance | Total Funding | Federal Funding | Non-Federal Funding | Record Count |
|---|---|---|---|---|
| Block Grant | 1,232 | 1,232 | | 1 |
| Formula Grant | 252,532 | 236,875 | 15,657 | 163 |
| Project Grant | 54,596 | 50,163 | 4,433 | 225 |
| CO-OP Agreements | 10,750 | 5,104 | 5,645 | 31 |
| Direct Assistance - Specified Use | 285,154 | 285,154 | - | 263 |
| Direct Assistance - Unspecified Use | 523,100 | 523,010 | 90 | 53 |
| Direct Loan | 8,480 | 8,480 | - | 57 |
| Guaranteed/Uninsured Loans | 110,156 | 98,220 | 11,936 | 23 |
| Insurance | 580,342 | 580,214 | 127 | 4 |
| Other | - | - | - | - |
| Total | 1,826,342 | 1,788,453 | 37,889 | 820 |

Source: U.S. Census Bureau, Governments Division
Created: April 19 2006
Last revised: May 01 2007

Census Bureau Links:  Home · Search · Subjects A-Z · FAQs · Data Tools · Catalog · Census 2000 · Quality · Privacy Policy · Contact Us

U S C E N S U S B U R E A U
Helping You Make Informed Decisions

Page Last Modified: May 01, 2007

LIST OF POSITIONS APPLIED AT DELAWARE AGENCIES

| | Position | DE Dept. | Date(DEDOL) | Number | 2nd Number |
|---|---|---|---|---|---|
| 1. | Tax Auditor I | Div. Of Revenue | 1/9/2006 | 17C-4600194 | 06010007M |
| 2. | Bank Auditor | Bank Commissioner | 1/9/2006 | 17C-4600195 | 06010008M |
| 3. | State Accountant III | Dept. of Finance | 1/9/2006 | 17CA600196 | 06010009M |
| 4. | State Accountant IV | Dept. of Finance | 5/31/2006 | 17C-2006-01036 | 06050237M |
| 5. | Asst. Dir. Of Fin. Mgmt | DEDOT | 6/21/2006 | 17C-2006-001133 | 06060273M |
| 6. | Accountant | DEDOT | 10/30/2006 | 17C-2007-00072 | 06100474M |
| 7. | State Accountant IV | Dept. of Finance | 10/30/2006 | 17C-2007-00073 | 06120543M(?) |
| 8. | State Accountant V | Dept. of Finance | 10/30/2006 | 17C-2007-00074 | 06120544M(?) |
| 9. | State Accountant II | Dept. of Finance | 10/30/2006 | 17C-2007-00140 | |
| 10. | St.Acc.II. IV, V | Dept. of Finance | 10/30/2006 | 17C-2007-00253 | 06120540M |
| 11. | Sr. Accountant | Management&Budget | 12/11/2006 | 17C-2007-00302 | 06120543M |
| 12. | Corporation Section Administrator | Corporations | 12/11/2006 | 17C-2007-00303 | 06120543M |
| 13. | Seasonal Corp. Assistants | Corporations | 12/11/2006 | 17C-2007-00303N | |
| 14. | State Accountant IV | Dept. of Finance | 4/2/2007 | 17C-2007-00736 | |
| 15. | Accountant | DELDOT | 4/2/2007 | 17C-2007-00738 | |
| 16. | Tax Manager, Tax Auditor II & III | Dept of Revenue | 4/2/2007 | 17C-2007-00739 | |
| 17. | Administrative Accountant | Management&Budget | 4/2/2007 | 17C-2007-00741 | |
| 18. | State Accountant III | Dept. of Finance | 4/2/2007 | 17C-2007-00744 | |
| 19. | Fiscal Administrative Officer | DEDOL | 4/27/2007 | 17C-2007-00876 | 07040260M |